# MAUD HIATT v. ST. LOUIS-SAN FRANCISCO RAIL-WAY COMPANY, Appellant.

### Division One, April 13, 1925.

1. **NEGLIGENCE: Contributory: Comparative: Imputed: Arkansas Statute.** Under the Arkansas statute contributory negligence is not an absolute defense in an action for damages against a railroad for personal injuries. On the contrary, it provides for comparative negligence, in that it declares that "contributory negligence shall not prevent a recovery where the negligence of the person injured or killed is of a less degree than the negligence" of the railroad, and that "where such contributory negligence on the part of the person killed or injured is shown, the amount of such recovery shall be diminished in proportion to such contributory negligence." And an instruction telling the jury that the negligence of the driver of an automobile, as it approached a railroad crossing, cannot be imputed to a guest in the automobile, who had no control over its operation, may be given in an action based on this statute, tried in this State, there being no Arkansas law to the contrary. And the instructions given in this case did not, in terms, declare the plaintiff guilty of contributory negligence as a matter of law.

2. ———: **Signals: Evidence.** Arkansas statutes requiring the bell or steam whistle of a railroad engine to "be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and to be kept ringing or whistling until it shall have crossed said road or street" and requiring "all persons running trains to keep a constant lookout for persons and property upon the track of any and all railroads" and making the company "liable and responsible to the person injured for all damages resulting from neglect to keep such lookout," require employees upon a train, approaching a highway crossing, through a cut twelve feet deep and twelve hundred feet long, to blow the whistle at frequent intervals or to continuously ring the bell; and evidence that neither the bell was rung nor the whistle sounded until the train was within fifty feet of the crossing, and that no constant lookout for persons on the track or approaching it was kept, is ample ground for submitting to the jury the case of a plaintiff who was a guest in an automobile as it approached the crossing, at a speed of from eight to twelve miles an hour, through a clear space of three hundred feet, from which she and the driver might have seen the train, and the trainmen by watching would have seen the automobile—the statute further declaring that contributory negligence shall not prevent a recovery.

3. ———: **Statutory Presumption: Injury at Crossing: Instruction.** The Supreme Court of Arkansas has frequently construed the statutes of that state, on which this action is grounded, to mean that where death or injury to a person traveling on a public highway is occasioned by a moving railroad train, a statutory presumption of. negligence on the part of the railroad arises, amounting to a prima-facie case in favor of a plaintiff showing such injury or death, and putting upon the railroad company the burden of showing that it has not been guilty of negligence; and, therefore, an instruction telling the jury that if they find from the evidence that the plaintiff was riding as a guest in an automobile along a certain public road and over a public-road crossing of defendant's railroad track, and while passing over said public-road crossing said automobile was struck by defendant's train and thereby plaintiff was injured, "then under the laws of Arkansas a presumption arises that plaintiff's said injuries were caused by the negligence of said railroad company," is not error.

4. ———: **Lookout: Discovery of Peril: Authorized Instruction.** In an action against a railroad company for damages for personal injuries to a guest riding in an automobile which was struck by a train 'as it was in the act of crossing the railroad tracks at a public crossing, bottomed on the statutes of Arkansas, an instruction telling the jury that if they find from the evidence that "the servants of the defendant, while operating said train, failed to keep a constant lookout for persons approaching the track, and that if such lookout had been kept the employees could have discovered the peril of plaintiff in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, then you will find the defendant guilty of negligence," is authorized by evidence that the automobile, as it came through an open space three hundred feet wide, where it could have been discovered by the trainmen had they looked, did not change its speed of eight to twelve miles per hour; that the occupants were totally oblivious of their danger, and gave appearance of running head-long into peril; that they could have been seen by the trainmen as the train emerged from a deep cut from three hundred to four hundred feet from the crossing; and that no bell was sounded, no bell was rung, and no lookout was kept.

5. ———: **Arkansas Statute: Presumptive Negligence: Substantive Right.** The Arkansas statute declaring that "all railroads shall be responsible for all damages to persons or property done or caused by the running of trains in this State," literally construed, would make railroads operated in Arkansas insurers of persons and property against mishaps occurring through the running of trains; but as it has been uniformly construed by the Supreme Court of Arkansas to mean that proof of injury by a moving train only

Hiatt v. St. Louis-San Francisco Ry. Co.

makes a prima-facie case for plaintiff, without proof of injury, and that the railroad can only overcome this prima-facie case by showing that it was not at fault, such construction must be applied to a case founded on the statutes of that State and tried in this, and as thus construed such statute is not a mere matter of procedure, applicable only to actions tried in Arkansas, but substantive law, and gives to the plaintiff a substantial right in a case tried in this State.

6. ———: ———: ———: **Burden of Proof.** The Statute of Arkansas, construed by the courts of that State to mean that where a person is injured by a moving train a presumption of negligence arises against the railroad, which makes a prima-facie case in favor of plaintiff, does not shift the burden of proof, so as to make it one of procedure, but by it the burden is always upon the railroad to clear itself from blame; and it so remains even when plaintiff attempts to prove negligent acts on defendant's part.

7. ———: **Injury in Another State: Trial under Its Laws.** Where the action for damages for personal injuries is grounded upon the statutes and court decisions of Arkansas, it is not error for a Missouri court to try it under such statutes and decisions.

8. **EXCESSIVE VERDICT: Twelve Thousand Dollars.** The jury returned a verdict for twelve thousand dollars, for plaintiff, injured as the automobile in which she was riding attempted to cross railroad tracks at a public crossing. The case went to the jury under an Arkansas statute declaring that "contributory negligence shall not prevent a recovery where the negligence of the person injured is of less degree than the negligence" of the railroad trainmen, and the jury determined the relative negligence of the parties. Plaintiff was a guest of the driver of the automobile, and the trial court instructed the jury (properly) that his negligence could not be imputed to her; and of that instruction no complaint is made in appellant's brief. The result is that there is little of negligence that can be charged to plaintiff. She was thirty-five years of age, strong, healthy and active; she has practically lost the use of her right arm; as a result of a wrench of her back, there are painful reflexes, and a tender spot over the lumbar vertebra indicates injury to the spinal chord; her womb is so badly injured and painful that only its removal will bring relief; her sleep is not natural; there is mental depression, and lack of mental control is very apparent—a condition that did not previously exist. *Held,* that the verdict is not excessive.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson,* Judge.

AFFIRMED.

*W. F. Evans, Grayston & Grayston* and *Mann & Mann* for appellant.

(1) The court erred in giving Instruction 1. This instruction is erroneous in two particulars. (a) It told the jury that if they found that the automobile in which plaintiff was riding was struck by defendant's train on a public road crossing "then under the laws of the State of Arkansas a presumption arises that plaintiff's said injuries, if any, were caused by the negligence of said railway company." It is not the law in Arkansas that a presumption of negligence arises from the mere happening of such an accident. Section 8568 of the Arkansas statute, known as the lookout-statute, does place the burden of proof upon the railway company to establish the fact that the "duty to keep such lookout has been performed." In respect to all other acts of negligence, made so by statute, the burden of proof rests upon the plaintiff to prove such negligence. There being acts of negligence alleged and submitted to the jury by this instruction other than the violation of Section 8568 it was error to instruct the jury that the happening of the accident raised the presumption that the defendant was guilty of negligence in respect to all the various allegations of negligence. (b) In cases where negligence is presumed, for example as in those where the *res ipsa loquitur* doctrine is invoked in Missouri, the plaintiff cannot take advantage of the presumption that the defendant was guilty of negligence, and cast the burden on defendant of freeing itself from the negligence, where specific acts of negligence are alleged. Rice v. White, 239 S. W. 144; Pate v. Dumbauld, 250 S. W. 52; McGrath v. Transit Co., 197 Mo. 97. (c) If it be the law of Arkansas that the mere happening of the accident raises a presumption

of negligence and casts upon the defendant the burden of freeing itself from negligence, it is a matter of practice; it applies to the remedy and is no part of the right. Rue v. Buck, 124 Mo. 178; Scudder v. Bank, 91 U. S. 406; Hughes v. Winkleman, 243 Mo. 81; LaDuke v. Dexter, 202 S. W. 257; Tremain v. Dyott, 161 Mo. App. 217; Eingartner v. Ill. Steel Co., 94 Wis. 70; Heaton v. Eldridge, 46 N. E. (Ohio) 638; Union Ins. Co. v. Pollard, 94 Va. 146; Stock v. Detour Lumber Co., 151 Mich. 21, 114 N. W. 876; Geoghegan v. Atlas S. S. Co., 22 N. Y. Supp. 749; Railroad Co. v. Mitchell, 92 Ga. 77; Johnson v. Railroad Co., 91 Iowa, 248; New Orleans Railroad Co. v. Harris, 247 U. S. 1, 371, 62 L. Ed. 1167; Pennsylvania v. McCann, 54 Ohio St. 10; 12 C. J. 485; Smith v. Wabash, 141 Ind. 92; Helton v. Railroad Co., 97 Ala. 275. (d) Presumptions apply only in the absence of any evidence upon the question. They are indulged by the law *ex necessitati*. If there is any evidence on the question the presumption takes flight. Mockowik v. Ry., 196 Mo. 571; Burge v. Railroad, 244 Mo. 76; Tetwylder v. Railroad, 242 Mo. 178; Huggart v. Railroad, 134 Mo. 673; Brunswick v. Ins. Co., 213 S. W. 50. This is true although the facts appear from defendant's witnesses. George v. Mo. Pac. Ry., 251 S. W. 729; Rashall v. Railroad, 249 Mo. 509; Guthrie v. Holmes, 272 Mo. 215; Hurck v. Railroad, 252 Mo. 39; Schmidt v. Railroad, 191 Mo. 215. It is improper, and, therefore, reversible error to instruct a jury with reference to presumptions of fact as they relate to questions submitted for their determination after hearing the evidence. McKenna v. Lynch, 289 Mo. 16; State ex rel. v. Ellison, 268 Mo. 239; Rodan v. Transit Co., 207 Mo. 392; Morton v. Heidorn, 135 Mo. 608; Ham v. Barret, 28 Mo. 388; Moberly v. Ry., 98 Mo. 183. (2) The remaining portion of this instruction tells the jury that if the defendant failed to keep a constant lookout, and that "if such lookout had been kept the employees in charge of such train could have discovered the peril of the plaintiff as said automobile approached and went upon said crossing, in time to have prevented the injury," etc. This part of this instruc-

tion is error.   (a)   The lookout statute of Arkansas is but an enactment by statute of the last clear chance, or humanitarian doctrine, as applied in Missouri.   To make this statute actionable the plaintiff must have been in peril for such a time that her peril could have been discovered by the exercise of ordinary care in time for the operatives of the train thereafter, by exercising ordinary care, to have avoided the accident.   The proof did not warrant the submission of this question to the jury.   Under the decisions of Arkansas the statute is not actionable, and the operatives of the train are under no duty to reduce the speed of the train or warn until the peril is apparent.   Blythesville Railroad v. Gessell, 250 S. W. 882; Barnes v. Mo. Pac. Ry. Co., 251 S. W. 675.   (b) This instruction nowhere required the jury to find that the plaintiff was in peril, and it further assumes that she was in peril, a fact necessary for plaintiff to prove in order to make the violation of this statute actionable. Zini v. Railroad, 235 S. W. 86; Glaser v. Rothschild, 221 Mo. 180.   (3)   Instruction 1 told the jury that if defendant "failed to sound the whistle on said locomotive for a distance of at least eighty rods from the place where said railroad crossed over said public road, and failed to keep the same whistling until said locomotive crossed said public road, then you will find the defendant guilty of negligence."   Unless it is a sufficient compliance with the statute to sound the whistle "at reasonable intervals," then the Arkansas statute cannot be complied with unless the whistle is sounded when eighty rods from the crossing and the whistle cord held tightly, and one continuous whistle for a quarter of a mile is given. Under our theory of this statute it would, of course, be for the jury to find what constituted reasonable intervals between whistles, and this instruction left it to their judgment.   There is no half way point between whistles "at reasonable intervals" and constant whistling.   (4)   The verdict is excessive in amount, and so excessive as to show passion and prejudice on the part of the jury.

*Sizer & Gardner* for respondent.

(1)   The Supreme Court of Arkansas has consistently held that the cause of action so created does not contain the element of negligence, default or wrongful act, and, therefore, it is not incumbent upon the plaintiff, in enforcing this statute, to prove negligence; but that mere proof that injury was caused by the running of trains makes out a prima-facie case or raises a presumption of negligence.   This is not a mere matter of proof or procedure, but inheres in the cause of action itself.   Railroad v. Payne, 33 Ark. 816; Railroad v. Davis, 83 Ark. 217; Railroad v. Blalock, 117 Ark. 504; Railroad v. Pollock, 93 Ark. 240; Railroad v. Puckett, 88 Ark. 204; Railroad v. Carr, 94 Ark. 246; Railroad v. Drew, 103 Ark. 374; Baringer v. Railroad, 73 Ark. 548; Railroad v. Neely, 63 Ark. 636; Railroad v. Taylor, 57 Ark. 136; Railroad v. Davis, 83 Ark. 217; Railroad v. Steel, 87 Ark. 308; Railway v. Frambro, 88 Ark. 12; Railway v. Tomlinson, 78 Ark. 251.   (2)   This "statutory presumption," as announced by the Supreme Court of Arkansas, therefore clearly inheres in, and is a part of the cause of action created by this statute; that is, the plaintiff's cause of action is completely shown when he proves the injury resulted from the running of a train.   He need not prove that it resulted from negligence on the part of the railroad company, or that it was by wrongful act, neglect or default.   When the mere happening of the accident is shown it is incumbent upon the railroad company to show, if it can, that it was free from any fault or neglect. (3)   Likewise, the application of this presumption is not confined to any particular charge of negligence, but universally obtains where injury results from the running of trains notwithstanding the petition may have charged specific acts of negligence.   Railroad v. Fitzhugh, 121 Ark. 683; Railroad v. Evans, 80 Ark. 19.   (4) A statute similar in all respects to this Arkansas statute is the Carmack Amendment passed by Congress, regulating the transportation of property in interstate commerce.   That act makes the carrier liable to the lawful

holder of the bill of lading ''for any loss, damage or injury to such property caused by it or by any common carrier to which such property may be delivered.'' This statute leaves, however, to the carrier the right to show it was free from fault and without negligence. The cause of action created thereby does not have in it the element of negligence, default or wrongful act. 34 Stat. L. 584 (U. S. Comp. Stat. Supp. 1911, p. 1288, sec. 7); Railroad v. Robinson, 233 U. S. 173, 58 L. Ed. 901; Railroad v. Moore, 232 U. S. 182, 58 L. Ed. 906. (5) Appellant contends that no presumption of negligence obtains in Arkansas as to any negligence except the violation of the lookout statute. The fallacy of this contention has been demonstrated already. Plaintiff's cause of action was based, and recovery had upon Section 8562, heretofore dealt with, but a violation of the lookout statute was pleaded and submitted as a ground of negligence under Section 8562. Plaintiff's Instruction 1 submitted to the jury that if they found the appellant had violated the lookout statute, then it was guilty of negligence. In reality the provision in the lookout statute as to burden of proof did not impose upon railroad companies any additional duties than were already imposed upon them by Section 8562. Railroad v. Neely, 63 Ark. 636; Railway v. Taylor, 57 Ark. 136; Railway v. Davis, 83 Ark. 217; Railroad v. Steel, 87 Ark. 308; Railroad v. Frambro, 88 Ark. 12; Railroad v. Tomlinson, 78 Ark. 251. (6) It is claimed by appellant that the lookout statute was not properly submitted by Instruction 1, in that the jury were not required to find that the plaintiff was in peril. That a person struck by a train was not in peril would be nothing short of miraculous. The jury were required to find that appellant's servants ''failed to keep a constant lookout for persons upon the track as they approached the crossing.'' This fact they found to be true, and the facts and circumstances fully authorized and warranted that finding. Johnson v. Traction Co., 176 Mo. App. 174; Clark v. Railroad, 242 Mo. 570; Railroad v. Scott, 123 Ark. 100. (7) Section 8568A, Arkansas Statute, requires a bell of at least thirty pounds weight, and a steam

whistle to be placed upon each locomotive, and that the same "be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street." Plaintiff alleged as a ground of negligence the violation of this statute. Appellant concedes that plaintiff's Instruction 1, as worded, properly submitted the violation of this statute to the jury, but complains of the court's refusal to give its offered instruction which would have construed this statute to mean "signals sounded at reasonable intervals." The Supreme Court of Arkansas has construed this statute to mean just what it says. Hines v. Johnson, 224 S. W. 991.

GRAVES, J.—Action for personal injuries received at a railroad crossing near Fort Smith, Arkansas. The cause of action as stated in the amended petition upon which it was tried, is one under Arkansas statutes as the same have been construed by the Supreme Court of Arkansas. The statutes and the rulings of the court are all specifically pleaded. Plaintiff was riding in an automobile, owned and driven by another. In other words, she was a mere passenger or guest in the automobile. The material portion of the petition reads:

"That said defendant was at all the times hereinafter mentioned the owner of and operating a line of railroad extending from St. Louis, Missouri, in a southwesterly direction, through Monett, in Barry County, Missouri, and then running in a southerly direction through Barry County, Missouri, into the towns of Rogers, Fayetteville, Winslow, Van Buren and Fort Smith, in the State of Arkansas, in a northerly and southerly direction, and there crosses, some three and one-half miles north of the city of Fort Smith, in the State of Arkansas, a certain public highway running in a northeasterly and southwesterly direction, which public highway crosses the main line of the defendant railway company's tracks near an electric park north of the corpo-

ration limits of the said city of Fort Smith, Arkansas, which said public highway and the crossing over said tracks was at and prior to the time of the injuries to plaintiff, as hereinafter set out, a much traveled public highway or thoroughfare; that on the east side of the defendant's railroad tracks the view of an approaching train running south towards Fort Smith, Arkansas, on the defendant's said railroad tracks, was obstructed so that persons approaching said crossing and going in a southwesterly direction along said highway could not see the approach of a train running south as aforesaid, on account of high weeds and high embankments on either side of the tracks, caused by a cut in the construction of said railroad, on account of which cut the view of an approaching train was obstructed until the occupants of a motor car or vehicle were in a place of danger upon the tracks of the defendant; that on and prior to the time of plaintiff's injuries, as hereinafter set forth, the defendant had permitted a large quantity of weeds and brush and other obstructions to be on the right of way, and on the embankments adjacent to said crossing, and timber and other obstructions thereon situated, together with the curves and angles at said crossing, made said crossing a very dangerous one to persons traveling in vehicles, automobiles, or other conveyances over said crossing.

"Plaintiff states that on the 20th day of July, 1921, she was riding as a guest in a certain Chevrolet motor car being driven by one of her neighbors and friends, and that the driver thereof was driving along said highway, in a southwesterly direction towards said crossing, and as plaintiff and said driver approached said crossing she exercised ordinary care for her own protection, listended and looked for approaching trains, and, hearing no bell ringing and hearing no whistle being sounded, or other signals, said automobile proceeded to cross said tracks with plaintiff seated therein as a guest; and as soon as said automobile got near to said track and in a place of danger, plaintiff and said driver observed a

rapidly moving train then and there being pulled and drawn by a steam locomotive bearing down upon them, and said driver immediately used all possible means to extricate himself and plaintiff from imminent peril into which they had been thrown, and immediately turned said automobile to the left and undertook to get it out of danger, but said rapidly-moving passenger train approached and came over said crossing without sounding the whistle or giving warning of any kind, and struck the side of said car before said driver could extricate himself and plaintiff, and plaintiff was thereupon hurled with great force and violence from said car and was thrown a long distance, and portions of said locomotive struck plaintiff's body with such great force and violence that her left arm and shoulder, the muscles, ligaments, tendons and nerves of her body, arm, shoulder and neck were sprained, lacerated and torn, and the bones and muscles of her arm and shoulder were fractured and dislocated and otherwise injured, and plaintiff's back and spine and her head and face and the muscles, nerves, ligaments and tendons of her back and body, neck and face were broken, lacerated, torn and injured, and the bony structures of her back and spine were dislocated and impaired, and the vital organs of plaintiff were impaired and are now failing to function, and on account of the shock and injuries to her head and skull the bones and tissues of her head and skull were fractured and injured, and plaintiff's brain was injured and affected so that plaintiff's mental powers are impaired and are not functioning properly.''

Further the petition proceeds:

''Plaintiff states that on the 20th day of July, 1921, at the time of her injury, and for a long time prior thereto, there was and had been in force and effect as a part of the statutory law of the State of Arkansas the following provisions, known as Section 1432, Section 8562, Section 8568, Section 1568-A and Section 8575 of Crawford & Moses' Digest of the Statutes of Arkansas for the year 1921, which said sections and provisions are as follows, to-wit:

" 'Sec. 1432. The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defect of the common law made prior to the fourth year of James the First (that are applicable to our own form of government), of a general nature and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States and of the Constitution and laws of this State, shall be the rule of decision in this State unless altered or repealed by the General Assembly of this State.

" 'Sec. 8562. All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State.

" 'Sec. 8568. It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee, or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed.''

" 'Sec. 8568A. A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be

kept ringing or whistling until it shall have crossed said road or street, under a penalty of two hundred dollars for every neglect, to be paid by the corporation owning the railroad, one-half to go to the informer and the other half to the county; and the corporation shall also be liable for all damages which shall be sustained or by any person by reason of such neglect.

" 'Sec. 8575. In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence.'

"Plaintiff states that on said date it was the law and rule of decisions, as announced by the opinions and decisions of the Supreme Court of the State of Arkansas, that it was and is the duty of the employees of a railroad company to keep a constant lookout and watch for persons on or approaching the track or railroad crossings, and to so station and place themselves on the moving trains as to make their lookout effective and to use all precaution to discover and warn travelers along the highway of impending danger, of the approach of trains or cars to a public crossing, and to stop said trains or cars, or slacken the speed thereof, if it is possible to do so, to avoid injury to persons or property at such public crossing; that if a person is injured by a moving train within the State of Arkansas the law presumes that such injury was the result of negligence upon the part of the operative of said train, and the burden is upon said railroad company to overcome said presumption, by the greater weight of the evidence, and to show that its duty to comply with the lookout-statute of said State of Arkansas has been performed, and that such injury

was not the result of the failure of its employees to keep such lookout; that it is not always incumbent upon and necessary for a person approaching and crossing a railroad track to look and listen for approaching trains, and that all the facts and circumstances are to be considered by the jury in determining, and for the jury to determine whether or not such travelers should have looked out and listened for approaching trains before going upon the track, and that the doctrine of comparative negligence is applied and enforced in crossing cases in the State of Arkansas; that the question of contributory negligence of a traveler along the public highway in driving upon said crossing or in failing to discover the approach of a train, or cars, is a question of fact for the jury to pass upon; that said rules of law are declared and enunciated by the Supreme Court of the State of Arkansas in the cases of'' (here follows a long list of Arkansas cases).

The specific acts of negligence are then charged in the following language:

''Plaintiff states that her injuries, as aforesaid, were directly caused by the negligence of the defendant, its agents, servants and employees in the following manner and particulars, to-wit:

''In negligently and carelessly running and operating said train at a high, reckless and excessive rate of speed over and upon said crossing, and in approaching and running said train over said crossing without ringing the bell thereon and without sounding the whistle thereon as required by the laws of the State of Arkansas, and that said defendant, its agents, servants and employees were further negligent in permitting weeds and grass and other obstructions to be and remain along the right of way so as to obstruct from travel upon said highway a view of trains approaching said crossing from the north; that they were further negligent in that they failed to keep a constant and diligent outlook for plaintiff as they approached said crossing, and while plaintiff was driving towards the same in said automobile, and

that they were further negligent in that they failed to ring the bell and sound the whistle, and failed to give plaintiff any other warning whatsoever of the approach of said train when they knew, or, by the exercise of the care required of them by statutes in the State of Arkansas they could have known, that plaintiff was approaching and driving upon said crossing, and was in a place of peril and danger, and was unaware of the approach of said train when, by the exercise of the care required of them by the laws of the State of Arkansas, they could have so notified or warned the plaintiff in time to have avoided injury to her.

"That they were further careless and negligent in that they failed to sound the whistle and failed to ring the bell, and failed to otherwise warn or notify plaintiff of the approach of said train after they knew, or by the exercise of the care required of them by the laws of the State of Arkansas could have known, that plaintiff was approaching and driving upon said crossing, and was oblivious to the then impending danger when, by the use of such care and by the use of the means and appliances then at hand defendant's said employees could have warned or notified plaintiff of the approach of said train, and could have checked or slackened the speed thereof in time to have avoided injury to plaintiff."

Damages were claimed in the sum of $50,000. The answer was (1) a general denial, and (2) a plea of contributory negligence, specifying the matters wherein plaintiff failed to exercise ordinary care for her own protection. Reply was a general denial of any acts of contributory negligence.

The case was brought in Barry County, Missouri, but upon change of venue it went to Jasper County, Missouri, and there tried at Joplin, Missouri. Plaintiff had a verdict from the jury for $12,000, and from a judgment entered upon such verdict the defendant has appealed.

The evidence will be detailed in the course of the opinion in connection with what we find to be the applicable law.

I.   Plaintiff is a resident of Fort Smith, Arkansas, and on the day of the accident had gone with one Fletcher, a roomer in one of her rooming houses, from Fort Smith to Van Buren, Arkansas.   These towns are close together.   Fletcher, shown to be an old acquaintance of plaintiff and her husband, had bought a farm close to Van Buren, and had some peaches for sale.   Plaintiff thought she might want a part of them, and drove with Fletcher to Van Buren to see them.   Close to Fort Smith the roadbed of defendant crossed two public highways, the crossing being some 1200 feet apart.   The railroad ran from northeast to southwest, and the highway upon which plaintiff and Fletcher were traveling, at or near the point of injury, ran practically east and west. Fletcher and plaintiff, in an automobile, were approaching the tracks, coming from the east.   The train was coming from Van Buren to Fort Smith from the northeast. Between the two crossings was a cut, twelve or more feet deep, measuring from the rail of the track.   It was not so deep as the track approached Oak Park crossing, the place of accident.   The train was upon an upgrade, and the evidence tends to show was running eighteen to twenty miles per hour.   The automobile was approaching at a speed variously estimated at from eight to twelve miles per hour.   There was a truck ahead of the automobile in which plaintiff was riding, which crossed the track, and stopped, and a man thereon waved his hands toward the automobile, evidently trying to stop it, but plaintiff and Fletcher thought the truck man was in trouble, and would need help from them, and   while they were watching and discussing this action of the man in the truck, the train approached, and Fletcher turned his automobile in an effort to dodge a collision, but the machine was struck upon the side where plaintiff was riding, and both she and Fletcher were injured, and thereafter taken to the hospital.   It would seem that there was a clear space of 300 feet before the crossing was reached when the train might have been seen, had the occupants of the automobile not been occupied with

the actions of the man in the truck. Of course the train-men, had they been keeping a lookout, could have seen the situation of the plaintiff for at least the same distance. One witness said:

"Q. Now, he could see away back there if he had been looking out; he could see farther back than fifty feet? A. Yes, sir; I believe he could.

"Q. How far back would you say he could see?

"Mr. Mann: From what point?

"Q. Oh, from 300 feet, say, or 400 feet back, or as he come out of the cut. The cut never would have hid the fireman? A. The cut is gradual.

"Q. You stepped it off. He is coming out until he hits the crossing? A. Yes, sir.

"Q. The engine is much higher than a man? A. Yes, sir.

"Q. The man wouldn't come up to the top of the drive of the engine hardly, and the fireman sits away up above the driver? A. Yes, sir.

"Q. He could have seen 300 feet to 300 yards down the road? A. He has to look to one side.

"Q. The cars stream along there in rows? A. Yes, sir."

There was a car right back of plaintiff's car. The engineer did not testify, but the fireman did. He said he first saw the automobile when he was 100 to 150 feet away; that when he realized they were going to cross ahead of him the automobile was ten feet from the track, and he was fifty feet from the crossing, and he then "hollered" to the engineer. There is evidence tending to show that no signal by whistle was given until after the car was struck. The Arkansas statute provides:

"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street. . . . And the corporation shall also be liable for all

damages which shall be sustained by any person by reason of such neglect.''

There is ample evidence tending to show that the engineer and this fireman himself were not keeping the vigilant watch required by Section 8568 of Crawford & Moses Digest of the Statutes of Arkansas. The signal-statute mentioned above is Section 8568A, of the same digest. The court withdrew from the jury the alleged negligent speed, and the alleged negligence of permitting grass and weeds to grow upon the track. It suffices to say that there was ample evidence to take to the jury the questions of failure to ring the bell or sound the whistle, and a negligent failure to keep a constant lookout for persons on the track or approaching the same. These were the questions submitted by the plaintiff, and the finding of the jury thereupon is binding here, unless the jury was misdirected by the instructions given.

II.   For the reasons stated, supra, we need not consider the demurrer to the evidence, except from a possible legal standpoint, to be discussed later, with reference to instructions given and refused.   Under the Arkansas statute (Sec. 8575 of the Digest mentioned above) contributory negligence is not an absolute defense in an action for damages such as we have here.   This statute provides for comparative negligence, and reads:

"In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence.''

It is said in the briefs that the court declared the plaintiff to be guilty of negligence.   We find no specific

declaration of law to that effect. On the contrary the court gave what would be a good instruction in this State on imputed negligence, thus:

"The court instructs the jury that even though you may find and believe from the evidence that the driver, seated in the front seat of said car with the plaintiff, was guilty of negligence in approaching and driving upon said railroad crossing, yet if you further find that the plaintiff was a guest in said car and had no control over the management or operation of said automobile, then you are instructed that the negligence of said driver, if any, cannot be imputed to this plaintiff."

There is in instruction numbered one given for the plaintiff, this language: "Unless you further find and believe from the evidence that the contributory negligence of the plaintiff in approaching the crossing was equal to or greater in degree than the negligence of the defendant, and if you further find that such contributory negligence of the plaintiff was equal to or greater in degree than the negligence of the defendant, then you will find the issues in favor of the defendant."

And, in Instruction D given for defendant this language is used: "In determining the degree of plaintiff's contributory negligence you are instructed that a railroad crossing is in itself a signal of danger, and although plaintiff was not driving the automobile she was charged with the positive duty as the automobile approached the track to look carefully and listen carefully in each direction for approaching trains, and such duty to look carefully and listen carefully was a continuing duty until the crossing was reached and it was her duty if she saw or heard, or by the exercise of ordinary care could have seen or heard, the approaching train to have warned the driver thereof."

The most that can be said of both expressions is that it might be concluded that the trial court assumed the contributory negligence of plaintiff. If so, it contravenes the plaintiff's instruction upon imputed negligence given as aforesaid. When all facts are con-

sidered (there being no Arkansas law to the contrary) the plaintiff was entitled to the instruction upon imputed negligence. She was not the driver of the automobile, and we need not cite our cases, for they are too numerous upon this question. It suffices to say that no instruction given, in terms, declared the plaintiff guilty of contributory negligence, as a matter of law. But this is rather a side issue, in that the doctrine of comparative negligence is by statute made a part of the law of Arkansas, and it was for the jury to determine the relative negligence of defendant and plaintiff, and this they have done, adversely to the defendant. By the verdict the jury has said (under the statute) that the negligence of the defendant was greater than that of the plaintiff, and, if such jury concluded that there was contributory negligence the presumption is that they decreased the damages in proportion to the relative negligent acts of the two parties.

III.   The words of Section 8568A, of the Arkansas law, are unambiguous, and as said, there was ample evidence from which negligence could be found as against the defendant for failure to give the statutory notice to the traveler approaching the crossing. And as also suggested, supra, there was sufficient evidence from which the jury could conclude that the defendant was remiss in keeping a constant lookout, as required by statute. It is evident that the engineer was not upon the lookout as he emerged from the deeper portion of the cut, because the fireman says that he had to call the situation to the engineer's attention, when the train was within 100 to 150 feet from the crossing. At this time the car in which plaintiff was riding (he says) was going about eight miles per hour, but there was no evidence of slowing up. He further says when the train got within fifty feet, the car was within ten feet, and he then discovered the automobile was not going to stop. A sound of the whistle would have saved the automobile and its occupants, had it been given as the engine emerged from the deeper portion of the cut. A blast

*Warning Signal.*

even at the fifty foot point might have saved them. Plaintiff says she was on the lookout for trains, up to the time the man in the truck began his waving of the hands, when momentarily she failed to look up the tracks, until the train was right on them. So we reiterate that there was ample evidence from which the jury could find negligence in both statutory respects. There is evidence tending to show blasts of the whistle at some one point between the two crossings, but no continuous blowing of the whistle was heard. Nor was it blown at short intervals as the train approached this much used crossing. Giving the statute a most liberal construction it would at least mean the blowing of the whistle at quite short intervals, or the continuous ringing of the bell. This by way of reiteration of some that we have said, supra.

The real attack of appellant appears to be at instruction numbered one given for the plaintiff, and more particularly the italicized portions of the same. This instruction reads:

"The court instructs the jury that if you find and believe from the greater weight of the evidence that on the 20th day of July, 1921, the plaintiff was riding as a guest in a certain automobile along the public road near Fort Smith, Arkansas, and over a public-road crossing of the defendant's railroad track thereat, and while passing over said public-road crossing said automobile in which plaintiff was riding was struck by one of defendant's passenger trains then being run and operated by the defendant, its agents, servants and employees, and that plaintiff was thereby thrown from said automobile and injured, *then under the laws of the State of Arkansas a presumption arises that plaintiff's said injuries, if any, were caused by the negligence of said railroad company.*

"And in this connection you are instructed that if you find and believe from the evidence that the agents, servants and employees of the defendant, as they approached and ran said train over said crossing, failed to ring the bell on said locomotive at the distance of at

least eighty rods from the place where said railroad crossed over said public road, and failed to keep said bell ringing until said locomotive crossed over said public road, and that the defendant's said agents, servants and employees failed to sound the whistle on said locomotive at a distance of at least eighty rods from the place where said railroad crossed over said public road, and failed to keep the same whistling until said locomotive crossed said public road, then you will find the defendant guilty of negligence; *or, if you find and believe from the evidence that the agents, servants and employees of the defendant, while operating said train, failed to keep a constant lookout for persons upon the track as they approached said crossing; and if you further find that if such lookout had been kept the employee or employees in charge of such train could have discovered the peril of the plaintiff as said automobile approached and went upon said crossing in time to have prevented the injury to plaintiff by the exercise of reasonable care after the discovery of such peril, then you will find the defendant guilty of negligence;* and if you further find that either one or both of such acts of negligence, acting separately or conjointly, directly caused injury to plaintiff, then your finding and verdict should be for the plaintiff, unless you further find and believe from the evidence that the contributory negligence of the plaintiff in approaching the crossing was equal to or greater in degree than the negligence of the defendant, and if you further find that such contributory negligence of the plaintiff was equal to or greater in degree than the negligence of the defendant, then you will find the issues in favor of the defendant.''

Of the complaints lodged against this instruction we will note in the following paragraphs.

IV.   This accident was at a public crossing, then much used by motor vehicles.   The first complaint is as to that portion of the instruction which Negligence reads: ''then under the laws of Arkansas a Presumed. presumption arises that plaintiff's said in-

juries, if any, were caused by the negligence of said railroad company.''

We have quoted, supra, Section 8562, upon which this clause of the instruction was based. This statute was pleaded and proven as a part of plaintiff's case. The Arkansas decisions construing the statute are in evidence. In other words, this is a case which is governed wholly by Arkansas law. We should give to such foreign statute the meaning given to it by the highest tribunal of Arkansas. This statute was enacted in 1875, and the universal construction has been that where it is shown that an injury to either property or person has been occasioned by a moving train, proof of the fact that the injury was so inflicted, and of the injury, a statutory presumption arises that such injury was the result of the negligence of the railroad. The statute covers property as well as persons. It was the first section of the Act of 1875. [Laws of Arkansas for the Year 1875, p. 133.] The statute itself says nothing about presumption of negligence, but the Supreme Court of Arkansas has ruled from first to last that such presumtions inheres in such statute. It is a statutory right, granted by substantive law to every person injured by a moving train. In Railroad v. Davis, 83 Ark. 1. c. 220, it is said: ''The principal attack is made on the first instruction, which is copied in the statement of facts. Appellant argues that this instruction is only proper when the negligence of the company is a failure to obey the lookout statute. [Section 6607 of Kirby's Digest.] But counsel are in error in this, for it has been held that, under Section 6773 of Kirby's Digest, placing responsibility upon railroads where injury is done to persons or property by the running of trains, a prima-facie case of negligence is made out against the company operating the train by the proof of the injury. [Barringer v. St. Louis, I. M. & S. Ry. Co., 73 Ark. 548; St. Louis, I. M. & S. Ry. Co. v. Standifer, 81 Ark. 276.]'' The instruction mentioned above reads: ''The court instructs the jury that if they find, from a preponderance of the evidence, that the

plaintiff was injured, and that such injuries were caused by a running train of the defendant, then you are instructed that this is prima-facie proof of negligence on the part of said company.''

In a crossing case, Railway Co. v. Thompson, Administrator, 138 Ark. 179, in speaking of this statute, where the man was killed at a crossing, the court said: ''Again the killing was proved beyond question, *so the law will indulge the presumption that it was negligently done.* [St. L., I. M. & S. R. Co. v. Evans, 80 Ark. 19; Huddleston v. St. L., I. M. &. S. R. Co., 90 Ark. 378; St. L., I. M. & S. R. Co. v. Drew, 103 Ark. 374.]''

Later we have the case of Davis v. Scott, 235 S. W. l. c. 410, whereat the court says that if it be made to appear upon a retrial, that the deceased came to his death at a crossing then the negligence of defendant would be presumed. The language of the court is: ''If, however, the undisputed evidence shows on the next trial that the injury occurred at the crossing, then an instruction telling the jury that there is a presumption of negligence will be correct.''

In 1919 there was enacted the comparative negligence statute of Arkansas, which reads:

''Sec. 8575. In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence.''

In Scott's case it was contended that this Act of 1919 did away with the force of Section 8562, and the long line of cases construing it, but the court ruled against such contention, in this language: ''It is, however, contended by learned counsel for plaintiffs that the statute cited above and the decisions construing it are

not applicable because of the effect of another and later statute. [Act. No. 156, Session of 1919; Crawford & Moses' Digest, sec. 8575.] This later statute is on a different subject, and does not affect the former statute or this court's construction of it in the cases cited above. The later statute deals only with the question of liability in case of contributory negligence.''

·We shall not go further, although many more cases are cited, and additional ones could be found. From first to last the Arkansas court has held that, under this statute, Section 8562, when it is shown that death or injury to a person has been occasioned by a moving train, then there is a presumption of negligence as against the railroad, and the railroad is then called upon to clear its skirts by showing that it has not been guilty of negligence. This is substantive, statutory law, and not a mere rule of procedure. The presumption inheres in the cause of action itself. The court calls it ''a statutory presumption,'' created by the statute which gives the right of action, and fixes the liability. Plaintiff's instruction, so far as the clause that we first quoted, supra, is proper.

The italicized portion toward the end of this instruction is criticized. The complaint as to this portion is that when the plaintiff's automobile was discovered to be in danger, it was too late to avert the accident. It is also contended that the lookout-statute of Arkansas is the same as our humanitarian rule. We need not discuss that, but to us. it appears more nearly to correspond with the Vigilant-Watch Ordinance of the city of St. Louis, and cases in Missouri under that ordinance (if we were trying this case under Missouri law, which we are not) would be more applicable. The facts of the case do not comport with appellant's views. The positive evidence tends to show that the automobile never changed its speed, and gave appearance of running headlong into peril, and the occupants, totally oblivious of their danger. The man in the truck saw their plight and tried to stop them. What

**Discovering Peril.**

he saw the engineer saw, or could have seen, from the time he emerged from the deep portion of the cut. The fireman had to arouse the engineer when the engine was from 100 to 150 feet of the crossing, as he says. The engineer seems to have been on a vacation and did not testify. The engine emerged from the cut 300 to 400 feet from the crossing, and yet, according to plaintiff's evidence, no bell was rung, or whistle sounded. A blast of the whistle might have saved the occupants of the car, when the engine was 150 feet from the crossing. The car was running slowly according to all testimony, and could have been stopped in a short space, as we must know from general knowledge.

Under the rulings in Arkansas, the instruction is a proper one, but another suggestion of learned counsel will be noticed.

V.    Much is said in the briefs that the statutory presumption of negligence, ruled in all Arkansas cases, is not applicable to a trial of the issues in Missouri, because it is a mere matter of procedure, and is objective law, rather than substantive law, and is therefore governed by the law of the forum. The trouble with this contention lies in the fact that the statute has been overlooked. As said, this statute (which is the foundation of this case) was enacted in 1875. At the expense of brevity I requote the first section of the Act of 1875, which is now Section 8562 of Crawford & Moses' Digest, as follows: ''All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State.'' It does not say a word about negligent running of trains. Were it given a literal construction it would make the railroads of Arkansas insurers of persons and property as against all mishaps occurring through the running of their trains. It would be similar to our fire statute, which allows a recovery from a railroad for damages by fire

*Substantive Right.*

"communicated directly or indirectly by locomotive engines in use upon the railroad" owned by the corporation. We ruled that recovery could be had without proof of negligence. In other words the only thing required to be shown is that the fire was communicated from the engine of the railroad .corporation. We sustained the constitutionality of the act, as the same appears in Laws 1887, page 101. [Mathews v. Ry. Co., 121 Mo. I. c. 309 et seq.; Campbell v. Railway Co., 121 Mo. 340.] The Arkansas statute, supra, is as unqualified in terms, as is our fire statute. Our fire statute gave to the citizen a substance right, not a mere procedural remedy. So likewise does this Arkansas statute. It is upon this substantive right that plaintiff in this case founds her action. But this statute has been universally construed by the Arkansas Supreme Court to mean that proof of injury by a moving train only makes prima-facie case for the plaintiff, without proof of negligence, and that the defendant railroad can only overcome this prima-facie case by showing that it was not at fault. This construction reads into the very statute words which are not found there, but by such construction we are bound. The construction given makes this statute read that a prima-facie case is made for plaintiff by proof of injury, without proof of negligence. This is substantive statutory law, and not procedure merely. It is a substantive right conferred by the statute, when the construction of the statute is read into the law. It is as much a substantive right as the right conferred upon our citizens in fire cases, under our fire statute. In the instant case the plaintiff (under the court construction of the statute) had the statutory right to a verdict, unless the defendant cleared its skirts of blame. And this is true although the petition of plaintiff may have charged specific negligence against defendant. Railroad v. Fitzhugh, 180 S. W. (Ark.) l. c. 491, whereat McCulloch, C. J., says:

Defendant requested the court to give an instruction to the effect that the burden of proof rested on plaintiff to establish the fact that no signals were given by

bell or whistle. It is conceded that in an action where the injury occurs to a traveler at a crossing, proof of the injury makes a prima-facie case of negligence, but it is argued that that rule does not apply as to a specific charge of negligence contained in the complaint. The point is ruled contrary to defendant's contention in the case of St. L., I. M. & S. Ry. Co. v. Evans, 80 Ark. 19, 96 S. W. 616.''

We rule that the statute, as construed by the Arkansas Supreme Court (which construction becomes a part and parcel of the statute, so far as Missouri courts are concerned in trying a case under it) gives to plaintiff a substantial and substantive right, and is not a procedural statute at all.

VI. Furthering the idea suggested in the foregoing paragraph, we will add that the statute, and the construction given it, does not shift the burden of proof, so as to make it one of procedure, but the burden of proof under the statute is always upon the defendant to clear itself from blame. If the plaintiff shows injury from a moving train, she is entitled to recover, absent an affirmative showing upon the part of defendant. And this is true although plaintiff may attempt to show negligent acts upon the part of the defendant. In the long line of Arkansas cases, there were such attempts upon the part of plaintiff, but in all, the instructions as to presumptive negligence has been held proper. This presumption (under court construction is one inhering in the very cause of action. Proof of due care upon the part of the railroad is by the statute (as construed) as much of an affirmative defense as is proof of contributory negligence. All of which but strengthens the idea that the statute is giving to persons injured a substantial substantive right, and not a mere rule of procedure. In all the Arkansas cases the instruction upon statutory presumptive negligence is given, irrespective of the facts shown in evidence. We have cited but few of these cases, but the list is a long one.

*Burden of Proof.*

VII.    The foregoing paragraph covers all of the assignments of error made by appellant, except the alleged excessiveness of the verdict.   It is urged that

**Excessive Verdict.** (what we should have stated before) the trial court erred in trying this case under Arkansas law and statutes.   There was no error in this regard. The cause of action is bottomed upon Arkansas statutes, and the construction of such statutes by the Supreme Court of that State.   Of interest in discussing the amount of the verdict is the Arkansas Act of 1919, which introduced the doctrine of comparative negligence in that State.    This statute we have given in our statement. Contributory negligence is no bar to the plaintiff's action, unless the negligence of the plaintiff, in degree, equals or exceeds the negligence of the railroad employees.    In the instant case the evidence shows that plaintiff was a mere guest or passenger of the driver of the automobile, and had no control over its operation. The trial court properly instructed the jury that the negligence of the driver was not to be imputed to the plaintiff.   In its assignment of errors this instruction is not charged as error.   The brief makes no comment upon it, and although it was excepted to on the trial, such exception has been abandoned here.   In view of this undisputed law, there is but little in the way of negligence to be charged to plaintiff.   The jury by its verdict determined the relative negligence of the parties.   A peremptory instruction on the question of contributory negligence could not have been given, so that the sole duty of the jury, in this regard, was to compare the negligence of the parties.   [Davis v. Scott, 235 S. W. (Ark.) l. c. 410.]   The injuries were quite serious.   Before the trial she was a strong healthy woman in charge of a rooming house, and doing much work.   Since then she has been unable to work.   She has lost some thirty-five pounds in weight.   A neighbor says:

"She was just as active as anybody could be, as far as I know.   She is not like she has been.   She is not doing any work at all.   Prior to the injury she done all the

work upstairs, and after the injury she can't do anything. I have seen her pretty near every day. She comes up to the store every day, she comes up to his place, and talks to me. One minute she says something and the next minute she switches off to something else. Her mind is not as clear as it was before the injury. I have seen her every day after the injury.''

One of the doctors who examined her when in the hospital, and again later, says that she had a broken collar bone on the right side; that she had four or more teeth broken. In December following the injury in August, was the second examination. Of this examination he says:

''We found four of the bad teeth, that is, snags, and what plate work in the mouth was loose and bridge work was loose. There was a weakness in the grip of the right hand and some weakness in the right shoulder. There was pain and tenderness over the callus where the right collar bone was healing. The uterus or the womb was enlarged, turned backward, tender and painful, and examination caused it to bleed. There is a spot over the second lumbar vertebra in the back which was tender to pressure. We judge the nervous condition by the reflexes. These reflexes were exaggerated, that is a very nervous condition; she became easily excited from the examination. Now mentally, besides being irritable, a sort of depressed state; she did not answer questions readily, delayed answering. We X-rayed her teeth at that time. We have some pictures showing the results of those snags and the abscesses there.

''These conditions are what I found at that time; as to how they were produced, I wasn't present. The two lateral incisors are broken, the right lower bicuspid, left lower lateral canine and bicuspid, with abscesses under the roots of all. And abscesses under the two lower centrals that are crowned.

''Q. Did you examine her so as to ascertain if she was suffering pain? A. She is, painful from pressure and this injured uterus. Her shoulder was still painful on motion.

"Q. State whether or not her injuries are of a permanent nature. A. Well, the teeth are gone and those that are abscessed the roots will have to be removed. The collar bone, at her age, it is a question of seeing how much motion, free of pain, she will develop. How much of that will recover is a question that will have to show on examination. At this time the healing was not completed in December. It was broken in July and it wasn't complete in healing then.

"Q. State whether or not, in your opinion as a physician and surgeon, the injury to her collar bone may be permanent? A. I believe she will have some limiting of the motions of the shoulder. And the injury to her womb is a permanent affair there and should be removed. Understand that could be corrected by removal.

"Q. State what character of operation that would require. A. That means the removal of her womb with attachments, tubes.'

"Q. State whether or not it would be necessary to administer an anaesthetic. A. Yes, sir, it is a moderately severe operation.

"Q. Would such an operation as that be painful or not? A. Seventy-two hours after, any abdominal operation is painful."

The plaintiff was at the hospital fifteen days and afterward removed home. She describes her trouble, thus:

"When I came to and could discover where I was hurt I found my arm had been broken and my collar bone and my right arm crushed and I can't use it; I have no use of it any more. And pain comes from my neck that bothers me. I have no use of that arm to speak of. I have no strength at all in my right wrist, and my back is also bruised. My head, you know, was injured—my brain. Yes, I had bruises, but my back was bruised more; and my spine. I still suffer with my back and spine. Before this accident I was a big, strong woman; I done lots of work. I had four children and attended to two rooming houses. Of course what little help they

could give me wasn't much. I also set up at night and did lots of work. Now they have to wait on me. I am a nervous wreck. My womb was injured, and every few days I menstruate, and so painful and sore I can hardly stand it. I never was bothered with that trouble before. Never any trouble with my back. My back seems disconnected. It is wrenched and I have to give up; I can hardly set up or lay down at all. I had six of my own teeth broken, and two up there that were bridged in were broken, and all those are broken off. I just had two left there. Of course four of those were bridge work. The bridge work was knocked out. Four of my own teeth and two up above and the bridge work were broken off. I had not had any trouble or pain about those teeth after I had them fixed. I had them X-rayed and they have abscesses after this accident. Of course they should have been taken out, what was left, but I haven't felt strong enough to stand having them pulled. I have been too nervous. Of course I will have to have it attended to on account of my health going down. At the time of the injury I weighed 160 pounds. Now I weigh about 135, I think. From the 20th of July to the 15th of August I was in the hospital. I can't tell just when I come to out there. I didn't know very much out there, but at home, I judge it was, maybe, fifteen days after they taken me home.

"I think I was at the hospital fifteen days. I ought to have been there longer, but I insisted on going home to my little children. My little girl in the rooming house. I didn't want to leave her there, and Dr. Brooksher was very nice and let me go home.

"I am not able to do a bit of work, and sleep—I don't sleep sound. Of course I sleep, but it isn't a sound, natural sleep like before I was hurt. I am awfully nervous all the time and at times I am terrible, I don't know anything hardly, and they can't depend on me at home like they once could. The children depended on me, and now I depend on them for what little we have."

Under this evidence as to injuries we do not feel inclined to disturb the verdict of the jury.

The judgment should be and is affirmed. All concur.