BEULAH HOPKINS v. J. M. KURN and JOHN G. LONSDALE, Trustees of ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellants.— No. 38347.—171 S. W. (2d) 625.

Division One, April 6, 1943.

Rehearing Denied, May 4, 1943.

Motion to transfer to Banc overruled, June 1, 1943.

E. G. Nahler and Mann & Mann for appellants.

42

*Gardner & Gardner* for respondent.

44

 BRADLEY, C.—Action by the widow, under the Oklahoma death statute, for damages for the alleged wrongful death of her husband, Isaac M. Hopkins. Verdict and judgment went for plaintiff for $5,000. Motion for new trial was overruled and defendants appealed to the Springfield Court of Appeals. The court of appeals affirmed the judgment, but one of the judges dissented and asked that the cause be certified to the supreme court, which was done, pursuant to Sec. 6, of the Amendment of 1884, amending Art. 6 of the Constitution. See Hopkins v. Kurn et al. (Mo. App.), 164 S. W. (2d) 207. Sec. 6 of the Amendment of 1884 provides that when a cause is certified as therein provided, the supreme court "must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process." See also Bowman v. C. O. Jones Bldg. Co., 332 Mo. 520, 58 S. W. (2d) 718.

The petition pleads the Oklahoma law, including Sec. 6, Art. 23, Oklahoma Constitution, which section follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

The negligence alleged and submitted was the alleged failure of defendants to ring the bell or sound the whistle within reasonable hearing distance of the crossing where deceased was struck and killed. The answer was a general denial and a plea of contributory negligence.

Error is assigned as follows: (1) On overruling defendants' motion to strike that portion of plaintiff's petition pleading Sec. 6, Art. 23, Oklahoma Constitution; and (2) in refusing defendants' requested instruction in the nature of a demurrer to the evidence.

Deceased, in a Ford pickup truck, was struck and killed by a west bound passenger train, on what is called the west crossing near the town or village of Catale, Oklahoma, shortly after 9 A. M., December 15, 1939. Defendants contend that deceased was guilty of contributory negligence as a matter of law and that the trial court should have given the peremptory direction to the jury to find for defendants notwithstanding the above provision of the Oklahoma Constitution. Defendants say that said provision of the Oklahoma Constitution is *procedural* law and that the lex fori controlled. On the other hand, plaintiff contends that we "must apply the law of Oklahoma as a whole because it affects the substantial rights of the

parties. The question of contributory negligence must therefore be determined by the lex loci."

We will first dispose of the assignment based on overruling the motion to strike, and then, if necessary, will state the facts pertinent on the demurrer to the evidence.

■ Was it error to overrule defendants' motion to strike? That depends on whether Sec. 6, Art. 23, Oklahoma Constitution, is procedural law or substantive law. If the constitutional provision is procedural then the lex fori controls and not the lex loci delicti. Menard v. Goltra, 328 Mo. 368, 40 S. W. (2d) 1053; State of Kansas ex rel. Winkle Terra Cotta Co. v. United States F. & G. Co., 322 Mo. 121, 14 S. W. (2d) 576; Buchholz et al. v. Standard Oil Co., 211 Mo. App. 397, 244 S. W. 973; 5 R. C. L., p. 1044, Sec. 134; 12 C. J., p. 483, Sec. 92; 15 C. J. S., p. 877, Sec. 9 (b); 11 Am. Jur., p. 498, Sec. 186; Restatement—Conflict of Laws, Sec. 584.

The law in Sec. 584, Restatement, Conflict of Laws, is stated thus: "The court at the forum determines according to its own Conflict of Laws rule whether a given question is one of substance or procedure." In comment (b) on Sec. 584, in the Restatement, it is said that "in determining [627] whether an element of a foreign transaction is one of substance or procedure, a court will examine the entire transaction which is before it. This includes the statute or other rule of law creating the alleged right or duty, and *its interpretation thereof by the courts of that state*" (italics ours).

In 15 C. J. S., Conflict of Laws, Sec. 22, p. 949, it is stated: "It is within the competency of the court of the forum to determine what is matter of procedure and what of substance, with the limitation, however, that if a substantive foreign rule is embodied in a statute and the court of the forum erroneously decides that the point involved is procedural rather than substantive, thereby applying its own rule instead of the foreign statute, there is a denial of full faith and credit to the foreign statute."

To support the contention that Sec. 6, Art. 23, Oklahoma Constitution, is procedural and not substantive, defendants cite: Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 Pac. 969; Muskogee Vitrified Brick Co. v. Napier, 34 Okla. 618, 126 Pac. 792; Coates v. Riley, 154 Okla. 291, 7 Pac. (2d) 644; In re Smith's Estate, 132 Okla. 33, 269 Pac. 259; St. Louis-S. F. Ry. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973; Missouri, K. & T. R. Co. v. Dawson, 32 Okla. 793, 124 Pac. 10; Midland Valley R. Co. v. Larson, 41 Okla. 360, 138 Pac. 173; Bourestom v. Bourestom, 231 Wis. 666, 285 N. W. 426; Colucci v. Lehigh Valley R. Co., 202 N. Y. S. 717; Restatement—Conflict of Laws, Sec. 594.

On the other hand, plaintiff, to support the contention that said Sec. 6, Art. 23, is substantive and not procedural, cites: Jackson v. St. Louis-S. F. R. Co., 224 Mo. App. 601, 31 S. W. (2d) 250; Chicago,

R. I. & P. R. Co. v. Cole, 251 U. S. 54, 40 S. Ct. 68, 64 L. Ed. 133; Caine v. St. Louis-S. F. Ry. Co., 209 Ala. 181, 95 So. 876, 32 A. L. R. 793; Herron v. Southern Pac. Ry. Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857; Atchison, T. & S. F. Ry. Co. v. Spencer (9th Cir.), 20 Fed. (2d) 714. Also, plaintiff relies on the majority opinion by the court of appeals in the present case.

Defendants contend that the supreme court of Oklahoma, in the Beacham case, supra, construed Sec. 6, Art. 23, Oklahoma Constitution, to be remedial, that is, *procedural*, and not substantive. If such is the case then it will be conceded that such construction will and should be followed in a foreign forum. The Beacham case was an action for damages for personal injuries. The cause accrued before Oklahoma was admitted as a state, but was not commenced until after statehood. The plaintiff was injured while attempting to oil machinery, and the negligence alleged was that the defendant had failed to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work. The answer was a general denial, contributory negligence, and assumption of risk. The plaintiff had judgment below and the cause reached the supreme court of Oklahoma by writ of error. Defendant took the position that as the injury was inflicted prior to statehood, "plaintiff was not entitled to the benefit of said provision (Sec. 6, Art. 23 of the Const.) although the Constitution was adopted prior to the commencement of the action, for the reason that section 1 of the Schedule preserved the status of all suits, rights, etc., arising prior to statehood as they existed under the territorial government.

In ruling the point the court said [120 Pac. 1. c. 971] : "We cannot agree with counsel. The rule is that no person has a vested right in any particular mode of *procedure,* and if, before the trial of the cause, a new *law of procedure* goes into effect, it governs, unless the statute itself provides otherwise. There is nothing in the Constitution nor the Schedule indicating a purpose to restrict the power of the state *to change modes of procedure* as to causes of action arising prior to the admission thereof, except as to actions that were pending at that time, unless it is section 1 of the Schedule to the Constitution, which provides: 'No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place.' . . . It certainly was not the intention to provide that no *change of remedy* which might be adopted under the Constitution should apply to the enforcement of a contract made or judgment rendered before its adoption. Such a construction would operate to keep in force laws flatly repugnant to the Constitution itself, and such laws are by direct implication repealed by that instrument" (italics ours).

In the Napier case, supra, the Oklahoma supreme court reaffirmed its ruling in the Beacham case. It will not be necessary to deal separately with the other Oklahoma cases cited by defendants. These deal with questions similar to the question in the Beacham case, and where said Sec. 6, Art. 23, was involved, it was applied retrospectively as in the Beacham case.

The Bourestom case, supra, a Wisconsin case, was a guest action for damages for personal injuries received when the car in which the plaintiff was riding collided, in Oklahoma, with another car. Assumption of risk on the part of the plaintiff was involved. In ruling the point, the Wisconsin supreme court said [285 N. W. 1. c. 429]:

"The plaintiff's motion for review is directed at a ruling of the trial court that the question of assumption of risk is not necessarily for the jury in all cases. The plaintiff contends that because of a provision of the Oklahoma Constitution, this court is without power to disturb the finding of the jury on assumption of risk. But the provision which the plaintiff relies upon, Sec. 6, Art. 23, Okla. Const., . . . clearly relates to *procedure,* as to which the law of the forum controls. When the evidence on the question of assumption of risk presents an issue of fact, that issue is for the jury, but where as on the question of assumption of risk of speed in the present case, the facts are clearly proven and there is no real dispute in the evidence bearing on that question, it is for the court to say as a matter of law that the plaintiff assumed that risk" (italics ours).

The Colucci case, supra, a New York case, was an action for damages for injuries sustained at a railroad crossing in New Jersey "where the company had not installed any safety gates, bell or device to warn and protect the traveling public at such crossing." A New Jersey statute provided "that in such an action the plaintiff shall not be nonsuited on the ground of contributory negligence on his own part, but the question of whether he was exercising due and reasonable care shall be left to the jury to determine." The plaintiff contended that the New York court, regardless of what the court thought about the plaintiff's contributory negligence as a matter of law, "must leave the matter to the jury in accordance with the New Jersey statute." In ruling the point the New York court said [202 N. Y. S. 1. c. 718]:

"The plaintiff has brought this action in our courts and submits to its procedure. In this state judges are elected to determine questions of law, and juries are selected to determine questions of fact. The defendant's motion for a nonsuit presents a question of law. The plaintiff asks to have the judge put aside and the jury substituted for him in passing on this question, because that is the practice enacted for New Jersey. I cannot see how it would differ in principle to urge that 7 men might render a verdict in this case, if the New Jersey statute provided for a verdict by a majority of a jury. Sup-

pose that the New Jersey statute had provided that the questions of fact, of negligence and contributory negligence, should be determined by the judge and the jury assess the damages, would it be urged that a plaintiff seeking our jurisdiction would be exempt from the constitutional requirement (article 1, Sec. 2) that trial by jury shall remain inviolate because the New Jersey statute discharged the jury from exercising its usual functions? There seems to me to be no difference in principle between the positions in each of these instances.''

Restatement—Conflict of Laws, Sec. 594, follows: ''The law of the forum determines whether an issue of fact shall be tried by the court or by a jury.'' The comment under said Sec. 594 follows:

''By the law of state X, the question of contributory negligence must be determined by a jury; by the law of state Y, the court, in the absence of doubt, may decide the question without submitting it to a jury. In a suit in Y for a personal injury in X, the defendant alleges contributory negligence by the plaintiff. The court refuses to submit the issue to the jury, on the ground that there is not evidence of such negligence sufficient to justify a verdict. There is no error.''

The supreme court of Pennsylvania, in a case where the New Jersey statute was involved, as it was in the Colucci case, held the same as did the New York court. Singer v. Messina, 312 Pa. 129, 167 Atl. 583, 89 A. L. R. 1271. And in the Singer case, the comment on Sec. 594, Restatement—Conflict of Laws, is quoted with approval.

The following cases, we think, are also to the point. In McArthur v. Maryland Cas. Co., 184 Miss. 663, 186 So. 305, 120 A. L. R. 846, it was held that in view of the decisions of the Louisiana courts, holding a Louisiana statute to be procedural [629] which gives to an injured party in a tort action the right to sue the insurer of the tortfeasor directly, the Mississippi court must regard the statute as procedural.

In Murray v. New York, O. & W. R. Co., 242 App. Div. 374, 275 N. Y. S. 10, it was held in an action brought in New York for recovery for death negligently caused in Pennsylvania, that the New York court would determine whether the Pennsylvania statute, conferring upon a class of persons the right to sue, was procedural or substantive. Other cases are cited in 89 A. L. R. 1271, note.

We now consider the cases relied upon by plaintiff to support the contention that said Sec. 6, Art. 23, is substantive, and not procedural. In the Jackson case the Springfield Court of Appeals held that the provision was substantive and not procedural. Among the cases relied on is Hiatt v. St. Louis-San Francisco Ry. Co., 308 Mo. 77, 271 S. W. 806. That case was for damages for personal injuries received at a railroad crossing in Arkansas. The Arkansas statute, Sec. 8562, Crawford & Moses' Arkansas Digest, provided: ''All railroads which are now or may be hereafter built and operated in whole or in part

in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State.'' At the time of the opinion in the Hiatt case, the Arkansas supreme court was holding that proof of injury by the operation of a train in Arkansas made a prima facie case for the plaintiff without proof of negligence, and that the railroad company could only overcome such prima face case by showing it was not at fault, and the Arkansas supreme court was then also holding that this *presumption* of negligence was something *substantial* and took the case to the jury notwithstanding what the evidence as to the facts might be. In the Hiatt case this court said [271 S. W. l. c. 812, 813]:

"Much is said in the briefs that the statutory presumption of negligence, ruled in all Arkansas cases, is not applicable to a trial of the issues in Missouri, because it is a mere matter of procedure, and is adjective law rather than substantive law, and is therefore governed by the law of the forum. . . . It is a substantive right conferred by the statute, when the construction of the statute is read into the law. It is as much a substantive right as the right conferred upon our citizens in fire cases under our fire statute. In the instant case, the plaintiff (under the court construction of the statute) had the statutory right to a verdict, unless the defendant cleared its skirts of blame. And this is true, although the petition of plaintiff may have charged specific negligence against defendant.''

But the Arkansas supreme court, in St. Louis-San Francisco Ry. Co. v. Cole, 181 Ark. 780, 27 S. W. (2d) 992, following the ruling of the supreme court of the United States in Western & A. R. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, where a Mississippi statute, similar to the Arkansas statute, was construed, abandoned its former construction and held that when the facts came in the preumption went out. And the supreme court of Missouri, in Kirkdoffer v. St. Louis-San Francisco Ry. Co., 327 Mo. 166, 37 S. W. (2d) 569, an Arkansas crossing case, disapproved the ruling on the point in the Hiatt case, that is, followed the later ruling by the Supreme Court of Arkansas on the construction of the Arkansas statute.

Chicago, R. I. & Pac. R. Co. v. Cole, supra [251 U. S. 54], originated in Oklahoma—Dickinson, Receiver, v. Cole, Admx., 74 Okla. 79, 177 Pac. 570. Cole, plaintiff below, sought recovery for the alleged wrongful death of the intestate, Roberts, who was killed while attempting to cross the Rock Island tracks in Oklahoma City. Contributory negligence and assumption of risk were pleaded as a defense. The Oklahoma supreme court said that were it not for article 23, Sec. 6, of the state Constitution it would be necessary to hold as a matter of law that the negligence of the deceased precluded recovery. The receiver contended that the constitutional provision took from him "a vested right in his defense of contributory negligence," and was in violation of the Fourteenth Amendment to the federal Con-

stitution. The Oklahoma supreme court denied the contention and affirmed the judgment in favor of the plaintiff below. The cause reached the supreme court of the United States and it was there held that the provision of the Oklahoma Constitution in question did not violate the due process provision of the 14th Amendment. The question as to whether the Oklahoma constitutional provision was procedural or substantive was not involved.

The Caine case, supra [95 So. 876], cited by plaintiff, was by the Alabama supreme court, and [630] involved said Sec. 6, Art. 23, Oklahoma Constitution. The Alabama court said [95 So. 1. c. 877] that "under the law of Oklahoma the rule of comparative negligence, prevails and contributory negligence on the part of plaintiff is not a bar to the right of action, but presents merely a question of fact for the jury." The court, we think, was in error about the rule of comparative negligence prevailing in Oklahoma. It would appear, however, that the Alabama court ruled the question on the theory that such was the case. The court quoted 5 R. C. L., Sec. 135, p. 1044, as follows: "All matters of defense to an action, such as the fellow servant rule, contributory negligence, assumption of risk, etc., are to be determined in accordance with the lex loci delicti." Such is a correct statement of the law, but we think the text has reference to the *law* of contributory negligence, and not whether a constitutional or statutory provision requiring that the question of contributory negligence be submitted to a jury is procedural or substantive. On the very same page of 5 R. C. L. it is stated that among the matters which have been held to pertain to the remedy, and consequently to be governed by the lex fori is "whether the determination of a particular matter is for the court or jury." In support of the text, R. C. L. cites Mass. Benefit Life Assn. v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261, and the case supports the text.

The Herron case, supra [283 U. S. 91], originated in the Arizona federal district court and was to recover damages for personal injuries resulting from a collision between the plaintiff's automobile and the defendant's train in Phoenix, Arizona. Arizona had a constitutional provision identical with Sec. 6, Art. 23, Oklahoma Constitution. At the close of the plaintiff's case, the district court, notwithstanding the constitutional provision, directed a verdict for the defendant "upon the ground that the plaintiff was guilty of contributory negligence", and the cause reached the supreme court of the United States on certification of two questions by the circuit court of appeals. These questions were:

"First. Is the above provision of the constitution of the State of Arizona binding and controlling upon a Federal court sitting in that State? Or, putting the question in another form:

"Second. May a Federal court sitting in the State of Arizona direct a verdict for the defendant in an action to recover damages for per-

sonal injuries, when it appears as a matter of law that the plaintiff was guilty of contributory negligence, notwithstanding the state constitutional provision to the contrary?''

The supreme court answered the first question *no*, and the second question, *yes*. In other words, the supreme court of the United States held that the Arizona constitutional provision was not binding on the federal district court sitting in Arizona, because [283 U. S. 1. c. 94]: ''The function of the trial judge in a federal court is not in any sense a local matter, and state statutes which would interfere with the appropriate performance of that function are not binding upon the federal court under either the Conformity Act or the 'Rules of Decision' Act.''

In the course of the opinion, in the Herron case, the supreme court of the United States, of the provision of the Arizona Constitution, said [283 U. S. 1. c. 93]: ''It does not appear to be insisted by the appellant, and it could not be maintained, that this constitutional provision must be followed by the federal courts by virtue of the Conformity Act. U. S. C., Titl. 28, Sec. 724. The State, without violating the requirements of due process, may provide such a rule for its own courts, as it may do away with the jury altogether (Chicago, Rock Island & Pacific Ry. Co. v. Cole, 251 U. S. 54, 56), but, in view of its nature and effect, the rule cannot be regarded as one that relates merely *to practice or to a 'form' or 'mode of proceeding'* (italics ours). The provision 'cuts deep into the right, observed at common law, by which a defendant can obtain a decision by the court, upon a proven state of facts.' Atchison, Topeka & Santa Fe Ry. Co. v. Spencer, 20 F. (2d) 716. Even with respect to the burden of proof as to contributory negligence, this Court has said: 'But it is a misnomer to say that the question as to the burden of proof as to contributory negligence is a mere matter of state procedure. For, in Vermont, and in a few other states, proof of plaintiff's freedom from fault is a part of the very substance in his case. . . . But the United States courts have uniformly held that as a matter of general law, the burden of proving contributory negligence is on the [631] defendant. The Federal courts have enforced that principle, even in trials in states which hold that the burden is on the plaintiff.' Central Vermont Ry. Co. v. White, 238 U. S. 507, 512. See also, Beutler v. Grand Truck Junction Ry. Co., 224 U. S. 85, 88.''

It will be observed that what the supreme court of the United States said, in the Herron case, about the federal courts not being bound by the law of the state where sitting was prior to Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487.

Atchison, T. & S. F. Ry. Co. v. Spencer et al., supra [20 Fed. (2d) 714] was to recover damages for personal injuries received at a railroad crossing in New Mexico. The cause was commenced in the federal district court in Arizona. And as appears, supra, Arizona

had a constitutional provision identical with Oklahoma's Sec. 6, Art. 23. The defendant contended that the plaintiff was guilty of contributory negligence as a matter of law, and the circuit court of appeals reversed and remanded to the district court for error of the district court "in overruling defendant's motion for a directed verdict upon the ground that plaintiff was guilty of contributory negligence." The court went on, however, to say [20 Fed. (2d) l. c. 718] : "It is our opinion that the constitutional provision in Arizona lays down a rule of *substantive law,* rather than one pertaining to *remedy or of procedure.* Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104. It cuts deep into the right, observed at common law, by which a defendant can obtain a decision by the court upon a proven state of facts. What is, at common law, within the power of the judge of the court to decide, is in all cases left to the jury, and their finding is conclusive on the court. Thus, although by the law of the place where an injury has been inflicted the power and duty of the judge are to pass upon a clearly established state of facts, a litigant may avoid the consequences of the exercise of those functions by going into a jurisdiction where the fundamental local law strips the court of that power by making the jury the sole arbiter of a question with conclusive force upon the court. It seems clear that such provision is essentially substantive, and that the federal conformity statutes do not require its application" (italics ours).

We might say that neither the Herron case nor the Spencer case mentions the Oklahoma Beacham case. The opinion by the Springfield Court of Appeals in the Jackson case and the majority opinion in the present case, consider the Beacham case, but do not give to it the effect of holding that the Oklahoma constitutional provision here involved is *procedural.* Also, we might say that the Pritchard case, cited in the quote, supra, from the Spencer case, did not involve such question as we have here.

A note in 41 Harvard Law Review, 254, considers the Spencer case, supra. In the note it is stated that "if, by the lex loci, contributory negligence is held not to be a defense, or, at most, only a defense in mitigation of damages, such matters are rightly held to be substantive, and are applied even where suit is brought in a foreign jurisdiction", citing Clark v. Russell (8th Cir.), 97 Fed. 900; Ill. Central Ry. Co. v. Jordan, 117 Ky. 512, 78 S. W. 426. The note goes on to say that the reasoning in the Spencer case is unsound because "contributory negligence as a defense is unchanged by the statute; only the procedural method of ascertaining the fact of the plaintiff's negligence is altered. This view is sustained by decisions holding that such a statute has a retroactive effect", citing the Oklahoma Beacham case, supra.

The Herron case, supra, is discussed in a note in 29 Mich. Law Review, 1080, as follows: "The court, in the instant case, declared that the rule prescribed by the Arizona Constitution infringed greatly .

upon the defendant's common law right to a directed verdict upon a proven statement of facts, but did not hold that the constitutional provision prescribed a rule of substantive law. . . . However, a statute depriving the defendant of the defense of contributory negligence altogether it is conceived would clearly be one laying down a rule of substantive law since the effect is to extinguish completely the defendant's right, and not merely to 'cut deep into the right.' "

Adjective law, that is, procedural law, and substantive law are defined as follows: "Adjective law. A method provided by law for aiding and protecting defined legal rights; procedure; the law which prescribes the method of enforcing rights or obtaining redress for their invasion." 1 C. J., p. 1197. [632] "All of the authorities hold that a 'substantive law is that part of the law which creates, defines and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion." Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S. W. (2d) 268, l. c. 272. See also, Barker v. St. Louis County, 340 Mo. 986, 104 S. W. (2d) 371, l. c. 377.

In view of the law as we see it, we are constrained to rule that Sec. 6, Art. 23, Oklahoma Constitution, is procedural and not substantive, notwithstanding the two able opinions by the Springfield Court of Appeals. Able counsel for plaintiff, in the present case, say that there are "some incidental remarks" in the Beacham case opinion indicating the construction we give it. In view of our holding that Sec. 6, Art. 23, is procedural and not substantive, and since the Oklahoma supreme court, as we construe the Beacham case, so holds, we must rule that the trial court erred in overruling defendants' motion to strike from the petition that part pleading Sec. 6, Art. 23, Oklahoma Constitution. Jackson v. St. Louis-San Francisco Ry. Co. (Mo. App.), 31 S. W. (2d) 250, in so far as in conflict with our ruling here, is overruled. It would seem that the ruling in the Jackson case that Sec. 6, Art. 23, Oklahoma Constitution, was substantive and not procedural, was based in considerable part upon the ruling of this court in the Hiatt case, supra [271 S. W. 806], but as appears, supra, the Hiatt case ruling on the Arkansas statute is no longer followed.

Since we have reached the conclusion that Sec. 6, Art. 23, Oklahoma Constitution, is procedural and not substantive law, it becomes necessary to determine whether or not the trial court erred in overruling what we may term as defendants' demurrer to the evidence. The specific question is, Was the deceased guilty of contributory negligence as a matter of law as the substantive law of contributory negligence exists in Oklahoma?

Sec. 595 Restatement, Conflict of Laws, provides: "(1) The law of the forum governs the proof in court of a fact alleged; (2) the law of the forum governs presumptions and inferences to be drawn from evidence."

In comment (a), in Restatement, on Sec. 595, it is stated: "Proof in court covers all matters falling within the description 'burden of proof.' This includes what is sufficient evidence on an issue of fact to entitle the jury to consider it." In view of the law so stated, we shall, in the present case, apply the law of the forum in ruling defendants' contention that the deceased was guilty of contributory negligence as a matter of law, and give to plaintiff the benefit of what is sometimes termed the favorable evidence rule. This rule is stated in Cento v. Security Bldg. Co. (Mo. Sup.), 99 S. W. (2d) 1, l. c. 5, as follows: "A defendant's demurrer to plaintiff's evidence 'admits as true every fact and circumstance which plaintiff's evidence tends to prove; that plaintiff is entitled to the benefit of every inference of fact which may reasonably be drawn therefrom; that the evidence must be considered in the light most favorable to the plaintiff; that the defendant's evidence must be disregarded except in so far as it may tend to aid plaintiff's case; and that such a demurrer can be sustained only when the facts in evidence and the legitimate inferences to be drawn from such facts are so strongly against plaintiff as to leave no room for reasonable minds to differ.' "

As stated, supra, defendant was struck and killed, shortly after 9 A. M., December 15, 1939, on the west crossing at Catale, Oklahoma, by a west bound passenger train. Defendants contended at the trial that the west crossing, where deceased was struck and killed, was a private crossing, but plaintiff's evidence was to the effect that defendants or the railroad company had kept up the crossing over a period of many years, and that west bound trains, for the most part, recognized it as a public crossing by giving public crossing signals. Also, plaintiff had some evidence of user. At the trial, defendants objected to plaintiff's evidence as to defendants' upkeep, etc., but does not assign error on such.

The deceased lived about 10 miles south of Catale. His stepson, Woodrow English, lived a short distance north of the crossing where the casualty occurred, and deceased, at the time, was on his way to the stepson's house. The railroad runs practically east and west through the town, and north of the mainline track is a switch track. The main street in Catale runs north and south, and near the south line of the railroad right of way, the street or road veers somewhat to the east and crosses the tracks at a public crossing, referred to in the evidence as the east or Catale crossing. At a point a short distance north of [633] the point where the street or road veers somewhat to the east and to the Catale crossing, a road turns west and runs along on the right of way, but near the south line, to the west crossing. The distance between the east crossing, the Catale crossing, and the west crossing is about 1000 feet.

It may be said that plaintiff's evidence established the following facts. Deceased, 44 years old, "in good health, able bodied," was

riding alone in a 1939 Ford pickup truck. His stepson, Woodrow English, testified that the truck was in good condition; that "it had a stock rack on it, and slats around it. It stuck up about five feet above the top of the cab. It was constructed so he could haul cattle in it. It had an end gate in the back." The cab "had glass in the back . . . about ten inches long and about six inches wide . . . and it (the cab) had windows on around it and a windshield. There was glass in the top of the cab door. You could roll it up and down. There was no glass back of the door from there back around." As stated, deceased's stepson lived a short distance north of the crossing where the casualty occurred, and the year prior to the casualty, deceased had been over the crossing once or twice a week. Quite a number of passenger trains, east and west bound, passed through Catale every day, and in addition, "a good number of freight trains" passed through, and the freight trains did not run "on any schedule particularly." Deceased "had cattle in the pasture south" of the stepson's place and had "been over there and around the place when trains would go through and whistle." The train, running about 70 miles per hour, on a slightly down grade track, and about 18 minutes late, gave no warning, according to plaintiff's evidence, and struck the truck about midway, possibly a little to the rear from midway.

The road running west to the crossing concerned was a rutted and winding dirt road; was "pretty rough and had a few chug holes in it", and one could not drive "too fast, without it would shake you out of the truck." And one witness guessed that this road was wet, and thought "it was kinda' slick", but the road from the point where it turned north to the crossing was in good condition, and this point was 14 steps (about 3 feet each) from the south rail. There was a small unguarded bridge or culvert, about 9 or 10 feet, east and west, over the ditch alongside the railroad, and it was 2 or 3 feet from the bridge down to the bottom of the ditch. The ground about was comparatively level, but there was a rise of 8 or 10 inches in going over the ballast and railroad track.

The road along the south edge of the right of way where it nears the turn to the crossing, according to plaintiff's witness, Gilham, "leans south; it then reverses itself and makes a circle and crosses the railroad at about a 70 degree angle, and no straight road approaching the crossing. It doesn't straighten out until it is on the crossing. This culvert or bridge across that ditch is practically at right angles to the south rail of the main tracks."

There were two rows of trees, extending east and west on the right of way, south of the track, and east of the crossing involved. None of these trees was closer than about 18 feet to the track, and the nearest tree was about 400 feet east of the crossing involved, and there was nothing on the right of way in the nature of an obstruction between the crossing and the trees.

It was held in Hines, Director General, v. Dean, 96 Okla. 107, 220 Pac. 860, that the following instruction correctly stated the duty resting on a traveler upon a public highway before entering upon a railroad crossing in Oklahoma:

"You are instructed, therefore, that it is the duty of a person about to cross a railroad track to make a vigilant use of his senses in order to ascertain if a train is approaching, and it was the duty of the plaintiff, on approaching the tracks of the defendant, to look and listen for approaching trains before attempting to cross said track, and it was her duty to keep her faculties in active exercise and not permit her attention to be diverted from the danger before her, and this duty rested upon her with respect to the track which she was attempting to cross at the time she was struck by one of the defendant's trains."

In Mo. Pac. R. Co. v. Merritt, 104 Okla. 77, 230 Pac. 513, the court reviewed several Oklahoma cases and said:

"Persons crossing railroad tracks must stop, look, and listen before driving on the tracks. They must know that trains are liable to be passing at all times and it is a reckless disregard of their duty to drive on the railroad tracks without using the precaution to stop, look, and listen. They cannot disregard this duty and rely on the engineer [634] failing to sound the whistle or ringing the bell. If the fact is that they did fail to sound the whistle or ring the bell, such fact would not relieve the person seeking to cross the railroad tracks from the necessity of taking ordinary precaution for his safety. Negligence of the company's employees in these particulars was no excuse for the negligence of Clay Jones."

In Hutchison v. St. Louis-San Francisco Ry. Co., 335 Mo. 82, 72 S. W. (2d) 87, l. c. 91-92, this court, in speaking of the duty of a traveler approaching an Oklahoma railroad crossing in an automobile, said:

"While in Oklahoma the court may not instruct the jury what facts will constitute contributory negligence it may instruct 'what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence.' Hines v. Dean, supra, 96 Okla. 107, 220 Pac. 860, l. c. 862. Pursuant to that rule the Oklahoma supreme court has in a number of crossing accident cases defined such duties. . . . Under those decisions it cannot be said as a matter of law that in all cases it is the duty of a person approaching a railroad crossing in an automobile to bring his vehicle to a complete stop before going upon the crossing. It is his duty to look and listen, to make vigilant use of his senses, and not permit his attention to be diverted from the possible dangers, and to use such care as is commensurate with the circumstances and surroundings to avoid injury. There may be circumstances under which he should stop, but whether or not this is true depends upon the particular facts of the case. Mis-

souri, K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753; Clements v. A., T. & S. F. Ry. Co., 124 Okla. 13, 253 Pac. 496; Chicago, R. I. & Pac. Ry. Co. v. Baroni, 32 Okla. 540, 122 Pac. 926; Hines v. Dean, supra. . . . The rule as to the duty of a driver approaching a railroad crossing under Oklahoma decisions does not differ greatly, if it can be said to differ substantially at all, from that in this state, unless such duty here would be affected by our statute requiring of automobile drivers the highest degree of care in driving such vehicles; a question we need not consider as no similar Oklahoma statutory requirement is invoked."

When the deceased swung out to the south with the road and then turned north towards the crossing he was, most favorably stated, about 42 feet from the south rail, and at that time the train must have been in plain view. The road for the 42 feet was in good condition. It is unlikely that he was driving fast when he made this turn, and this because of the condition of the road leading to the turn. The fireman on the train testified that he first saw the truck when it turned north "forty or fifty feet from the track"; that the speed of the truck was then 15 or 20 miles per hour and that the speed did not change; that the train was then 300 or 400 feet east of the crossing and running 70 miles per hour; "our speed didn't change any and his didn't either"; that the front of the locomotive was probably 70 or 80 feet east of the crossing, and the truck 15 to 18 feet south when "I saw we were going to hit him . . . and hollered to the engineer."

The only evidence coming from plaintiff's witnesses as to rate of speed deceased was driving, was that he was driving about 45 miles per hour about the time he turned west on the dirt road. But whatever rate of speed he was driving, it stands admitted that the truck was struck on the crossing. There is nothing to show that the roadway from the turn required any special attention from deceased. There can be only one conclusion, as we see it, that fair minds could reach, under the facts, and that is that deceased did not look, and that the failure to look directly contributed to produce the unfortunate result. In plaintiff's brief it is stated that "there was no window in the right side of the cab of the pickup." The evidence of the deceased's stepson, who was the only witness who described the truck, may not be susceptible of such construction, but if there was no window in the right hand side of the cab, and plaintiff's counsel ought to know, then the negligence of the deceased was all the more.

Under the law of Oklahoma, as to a traveler's duty in approaching a railroad crossing in an automobile, deceased was, as we see it, clearly guilty of contributory negligence as a matter of law. The judgment should be reversed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.