**Dorothy BARTLING, Respondent,**

**v.**

**FIRESTONE TIRE AND RUBBER COM-
PANY, a corporation, and Thomas W.
Forester, Appellants.**

No. 22103.

Kansas City Court of Appeals.

Missouri.

Jan. 10, 1955.

Stanley Garrity, Clyde O. Bowles, Jr., Kansas City, Caldwell, Downing, Garrity & Eastin, Kansas City, of counsel, for appellants.

Lowell L. Knipmeyer, Kansas City, Parker & Knipmeyer, Kansas City, of counsel, for respondent.

BOUR, Commissioner.

Dorothy Bartling brought this action against Firestone Tire and Rubber Company, a corporation, and Thomas W. Forester, an employee of that company, to recover damages for personal injuries sustained by her while in the act of entering, through a small door, the service department of a business operated by said company. Verdict and judgment were in favor of plaintiff, and against both defendants, for the sum of $1,200. Defendants have appealed.

The evidence showed that the Firestone Tire and Rubber Company operated a retail store at 640 State Street, Kansas City, Kansas. In connection with this business it maintained a department for servicing automobiles. State Street runs east and west. The building occupied by Firestone was on the north side of the street. It faced south and extended along State Street about 100 feet. The front line of the building was several feet north of the public sidewalk. The retail store was in the middle of the front part of the ground floor, and the remainder of the ground floor was occupied by the service department. The main entrance to the store was at the front or south side of the building, and on each side of this entrance was a display window.

Adjoining the store on the west, and set back a short distance from the front line of the building, were large double doors leading into the service department. This entrance was connected with Sixth Street by a driveway that extended north and south across the sidewalk in front of the building. As we understand the evidence, the large doors were suspended from rollers that moved upon a stationary track above the doorway. They were opened and closed by means of an electric motor, the motor being controlled by a push-button switch in the back part of the service department. At the time of the accident in question both doors were standing in a closed position. Plaintiff's Exhibit 1, a photograph of the entrance to the service department, was admitted in evidence without objection, after plaintiff testified that it correctly represented the conditions existing at the time of the accident. This photograph was taken with a camera located outside the building and pointed in the same direction that plaintiff was walking as she approached the place where she fell. It shows the large double doors and a part of the driveway mentioned above. It appears from the testimony and Exhibit 1 that each of the large doors consisted of two sections or leaves, rectangular in shape and joined together by strap hinges, their long dimensions being vertical. When closed the doors met in the middle of the doorway so that the four sections were in a line parallel to the front line of the building, which extended east and west. Within one of these sections, and forming a part thereof, was a pass door. Emil L. Bayerl, an architect called as a witness for defendant, testified that a pass door is "a door within a door". When the large doors were closed the section containing the pass door was the second section from the west side of the doorway.

Each section, including the pass door, was composed of wood and frosted glass panes. The strap hinges and the wooden members of the sections, including the wooden members of the pass door, were painted white. On the east side of the pass door, which opened inward, was a knob. The pass door did not extend to the level of the floor. Below that door was a solid horizontal piece called a rail, which extended to the level of the floor and formed a part of the section containing the pass door. The upper edge of the rail was about 11½ inches above the floor. At the time of the accident there was no sign on the premises to give notice that the rail was not a part of the pass door. Defendants (appellants), in their brief, refer to the rail as a "sill", and hereinafter we will use the same term.

At the time of the accident, plaintiff and her husband were living in Kansas City, Kansas, where the husband was engaged in business. The accident occurred about 4:00 p.m., on January 21, 1950. Plaintiff's husband had left his automobile at the Firestone service department for the purpose of having the brakes repaired. When he was informed, on the day of the accident, that the brakes had been repaired, he requested plaintiff to "pick up" the automobile. After leaving her husband, plaintiff walked to the northeast corner of Seventh and State Streets, where she turned east. She walked east on the sidewalk to the driveway which led from State Street to the Firestone service department, and then walked toward the pass door described above. As heretofore stated, the large double doors were closed at the time. Upon opening the pass door plaintiff attempted to step forward. In so doing she fell over the sill at the bottom of the section containing the pass door, and

was injured. Plaintiff testified that she was 51 years of age at the time of the accident; that as she approached the pass door she had no "difficulty in seeing"; that "it was daylight"; that she had never been on the premises before; and that she had never seen "a door of this type of construction before this accident".

On direct examination plaintiff testified, in part, as follows:

"Q. Did you then walk across the driveway of the station? A. * * * I walked in towards the building.

"Q. In an angle? A. Yes, sir. * * *

"Q. What first called your attention to the fact that there was a door there? A. There was a door knob that any ordinary door would have. * * *

"Q. What did you do when you got to this door? A. I opened the door, turned the knob and started in, went in and I fell, just dived in. I was very surprised this obstruction was in the door. I alighted on my two hands.

"Q. Where did you alight? A. It was on the inside of the door. * * *

"Q. In other words, when you opened the door the whole door didn't open? A. No, sir.

"Q. The bottom of the door remained stationary? A. Yes, sir. * * *

"Q. Was there any sign or warning or differentiation in color to indicate the bottom of the door didn't open? A. No, sir. * * *

"Q. Which way did this door open, open in or open out? A. It opened in. When I turned the knob it opened in, that is the reason I fell in."

Plaintiff testified on cross-examination:

"Q. How did you know this door opened in? A. I didn't know that it opened in until I went to the door and tried the knob. * * *

"Q. Your feet were inside or outside when you fell? A. I wouldn't know. When I started to fall my feet were outside. * * *

"Q. You say you never did undertake to step over that? A. I didn't see it, it looked like an ordinary door.

"Q. Would you answer the question? Did you ever undertake to step over? A. No. * * *

"Q. If you walked up to that door in plaintiff's Exhibit 1 you could pretty well guess at least that was the service entrance? A. I didn't think anything of it, I was told to pick the car up in the back. * * *

"Q. There was nothing unusual about it as far as you could observe? A. It looked just like a door.

"Q. You looked at the door before you opened it? A. Yes, I looked at the door.

"Q. You saw whatever there was to be seen? A. Yes.

"Q. Now, after you got the door open with your right hand, opened in, I want you to tell this jury whether or not you then looked to see where you were walking or did you look straight forward? A. I fell straight forward, the door opened, I went in as the door opened.

"Q. Did you look down at the floor? A. I didn't look down at the floor until after the accident, I looked at the whole door.

"Q. In other words, you did not look down where you were walking, you were looking at the door? A. I was looking forward and ahead.

"Q. But not down where you were walking? A. I was just walking in a door.

"Q. I understand you were. I am asking where you were looking as you walked in the door? A. I was looking at the door, I wasn't looking down at the ground."

The evidence showed that at the time of the accident defendant Forester was manager of the business operated by Firestone in Kansas City, Kansas, and that he had been so employed since February, 1949.

Defendants-appellants contend that the court erred in overruling their motion for a directed verdict, and in giving plaintiff's instruction 1.

■ Although plaintiff's injury occurred in Kansas City, Kansas, neither the plaintiff nor the defendants pleaded the law of Kansas. However, the petition alleges that plaintiff was injured in Kansas as a result of defendants' negligence. We think it is clear that the petition contains sufficient allegations to show that the substantive rights of the parties must be determined by the law of Kansas, and that we must take judicial notice of the applicable Kansas law. Sections 490.080 and 509.220 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Sup. Ct. Rule 3.14; McCain v. Sieloff Packing Co., Mo.Sup., 246 S.W.2d 736, 738; Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748, 750, 2 A.L.R.2d 1292; Graham v. Illinois Terminal R. Co., Mo. App., 260 S.W.2d 846, 851.

■ It is conceded that plaintiff's status at the time of the accident was that of an invitee or business visitor. In Bass v. Hunt, 151 Kan. 740, 745, 100 P.2d 696, 699, the court said: "A statement of the rule of liability of possessors of land to business visitors may be found in Restatement Torts, vol. 2, § 343, viz.: 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility.'" A storekeeper or other possessor of land is not an insurer of the safety of his business invitees. Thogmartin v. Koppel, 145 Kan. 347, 65 P.2d 571, 572. "The true ground of liability is his superior knowledge of the dangerous condition and his failure to give warning of the risk." Relahan v. F. W. Woolworth Co., 145 Kan. 884, 67 P.2d 538, 540. Hence there is no duty to warn the invitee of a dangerous condition on the premises which is as well known to the invitee as to the possessor, or which is obvious to a person exercising reasonable care for his own safety. See Thompson v. Beard and Gabelman, Inc., 169 Kan. 75, 216 P.2d 798, 800; Bass v. Hunt, supra; Jones v. Swatszel, 145 Kan. 99, 64 P.2d 555, 556. If such a condition is so obvious that the invitee can be reasonably expected to discover it and realize the risk involved therein, the condition itself constitutes adequate warning.

■ As stated, defendants assign as error the overruling of their motion for a directed verdict. They contend (1) that there was no evidence of negligence on their part; and (2) that if they were negligent, plaintiff was guilty of contributory negligence as a matter of law. Defendants pleaded contributory negligence on the part of plaintiff. Under the law of Kansas, such negligence precludes recovery. Bass v. Hunt, supra. For the purpose of determining whether the court erred in overruling defendants' motion for a directed verdict, we must view the evidence in the light most favorable to plaintiff. Such a motion should be sustained only when the evidence and the inferences reasonably to be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Hopkins v. Kurn, 351 Mo. 41, 55, 171 S.W.2d 625, 632, 149 A.L.R. 762 (an action for death of motorist struck

by a train in Oklahoma); Burris v. Kansas City Public Service Co., Mo.App., 226 S.W. 2d 743, 749.

In support of the contention that there was no evidence of negligence on their part, defendants insist that "the evidence failed to show a condition involving an unreasonable risk to business invitees like the plaintiff, a condition, in other words, which defendants reasonably should have anticipated would cause injury to such invitees". Defendants say that Exhibit 1 shows that "the panes of glass in the pass door did not correspond to the panes of glass in the other sections in size, number, or level of placement"; that "the rectangular panel in the lower part of the pass door did not correspond in size to the rectangular panels in the lower parts of the other sections"; that "the pass door was set back in the section containing it so that its frame formed a distinct border around all four sides of the pass door * * *"; that "the top edge of the sill projected noticeably in front of the bottom of the pass door * * *"; that "the wooden molding next to the sides of the pass door clearly ended at the top of the sill", as did the lower edge of the pass door; that "the sill itself gave only the appearance of a solid piece stretching all the way beneath the pass door and out to each side of it with no vertical lines or cracks in it to suggest that the pass door extended to the level of the driveway"; and that a strap hinge "joining the section containing the pass door and the section to its left was fastened to the sill and stretched beneath the pass door so as to indicate to one using his faculties that the sill was a part of the main section and would not open with the pass door". Defendants state that "the stationary sill was also obvious when the pass door was opened," and that "this was particularly true in broad daylight". They urge that at the time of the accident, which occurred about 4 o'clock in the afternoon, the condition complained of was obvious to a person exercising ordinary care; that they were under no duty to warn plaintiff of such a condition; therefore, there was no breach of duty on their part which resulted in injury to plaintiff. Defendants re-ly upon Cates v. Evans, Mo.App., 142 S.W. 2d 654, and Robinson v. C. & J. Piskosh, Inc., 259 App.Div. 544, 19 N.Y.S.2d 940.

The facts in the Cates case are unlike those in the case at bar. The defendant in the Robinson case operated a poultry market. The entrance to the market on week days was "through large open doors resembling the type of doors usually found at the entrances of garages; but on Sunday these doors were closed and sole access was through a smaller panel door which opened inwardly in the large door." The accident occurred on a Sunday. The plaintiff testified that when she pushed open the small door she fell or tripped over a sill which formed a part of the larger door, and that she "'had never gone through that little door before.'" In holding that "there was no negligence established on defendant's part and plaintiff's own testimony showed she was guilty of contributory negligence", the New York court said in part: "As the photographs in evidence indicate, the so-called panel or sill extending about nine inches above the level of the ground was clearly visible to anyone using ordinary care in pushing open the smaller door for the purpose of entering thereby. Stepping into the small panel door for the first time, plaintiff was under a duty to make reasonable use of her own faculties. She may not go heedlessly forward without looking where she is going, and then hold others responsible for damages caused by her own lack of care." 19 N.Y.S.2d loc. cit. 941. Defendants insist that the Robinson case supports their contention that there was no evidence of negligence on their part and should be followed. That case involved no more than its particular facts. The court's statement of the facts is meager. Since copies of "the photographs in evidence" are not embodied in the opinion, we cannot compare those photographs with Exhibit 1 in the instant case. To avoid repetition, it may be stated here that defendants also cite the Robinson case in support of their contention that if they were negligent, plaintiff was guilty of contributory negligence as a matter of law. In that case the plaintiff testified that at the time of the accident she

was not looking where she was going. In the instant case the plaintiff gave no such testimony. The opinion of the New York court is not persuasive authority on any of the questions raised by defendants' first allegation of error.

■ It is not necessary to analyze, point by point, defendants' detailed argument that there was no breach of duty on their part which resulted in injury to plaintiff. With their argument in mind, we have reviewed all of the testimony and carefully examined Exhibit 1, the photograph of the entrance to the service department. It is conceded that this photograph correctly represents the conditions existing at the time of the accident. As stated, the strap hinges and the wooden members of the large double doors, as well as the wooden members of the pass door, were painted white. Plaintiff testified that as she approached the pass door she had "no difficulty in seeing"; that the pass door "looked like an ordinary door"; and that she had never seen such a door "before this accident". Considering the evidence in the light most favorable to plaintiff, we cannot say as a matter of law that the actual position and dimensions of the pass door were obvious to a person exercising ordinary care for his own safety. In our opinion the evidence was sufficient to support a finding that reasonably prudent persons, in the position of defendants, would have realized that the condition in question involved an unreasonable risk to business visitors, and would have anticipated that such visitors might not discover the condition or realize the risk involved therein, and in the exercise of reasonable care would have made the condition reasonably safe or given a warning adequate to enable them to avoid harm. The question of whether defendants were negligent in maintaining the pass door, without giving adequate warning that it did not extend to the level of the floor, was one for the jury to decide. The verdict of the jury was necessarily predicated upon a finding that defendants were negligent and that plaintiff was not contributorily negligent.

The next question to be considered is whether plaintiff was guilty of contributory negligence as a matter of law. We quote from defendants' brief: "Assuming defendants were negligent, which we deny, plaintiff was herself contributorily negligent in failing to see the sill beneath the pass door so as to avoid falling over it * * *. Whether she failed to look or looked and yet failed to see, her failure to perceive that the pass door extended only to the top of the stationary sill was in either event contributory negligence. * * * the evidence shows that plaintiff was contributorily negligent as a matter of law, before opening the pass door and after opening it, in failing to see the stationary sill * * *." Defendants rely upon Glenn v. Montgomery Ward & Co., 160 Kan. 488, 163 P.2d 427; Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911; Heidland v. Sears, Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795; Cates v. Evans, supra; and Robinson v. C. & J. Piskosh, Inc., supra. We have said that we do not regard the Robinson case as persuasive authority. The other cases cited by defendants are not in point because ruled on entirely different factual situations.

■ As appears above, plaintiff testified that as she approached the pass door it "looked like an ordinary door"; that when she "looked at the door" she "saw whatever there was to be seen"; that she looked "at the whole door" and "didn't look down at the floor until after the accident"; and that she did not see the sill until after she fell over it. Plaintiff was not required in the exercise of ordinary care, to look out for an unsafe condition in the absence of knowledge or warning of its presence. See Buck v. Miller Amusement Co., 166 Kan. 205, 200 P.2d 286, 289. It is conceded that there were no warning signs on the premises. According to plaintiff's testimony she had never been on the premises at any time before the accident. Cf. Cates v. Evans, supra. Plaintiff was, of course, chargeable with knowledge of a danger which was obvious to a person exercising reasonable care for his own safety. But as stated above, if the condition complained of were that obvious there was no actionable negligence on the part of defendants, for the condition itself would have constituted adequate

warning. There can be no contributory negligence unless the defendant is guilty of negligence having a direct and proximate relation to the injury. We have held, however, that in the instant case it cannot be declared, as a matter of law, that the condition in question was obvious to a person in the exercise of ordinary care. Nor can we say, as a matter of law, that plaintiff was guilty of contributory negligence. Whether she should have done more than she did for her own safety was a question for the jury to decide.

It follows from what we have said that the court did not err in overruling defendants' motion for a directed verdict.

Defendants' last point is that the court erred in giving plaintiff's main instruction (No. 1). That instruction required the jury to find, inter alia, "that said board across the lower part of said entranceway or doorway and said door were so constructed and maintained as to appear to be all in one piece and all part of said door extending all the way down to the exterior paved surface; that by reason of the aforesaid condition persons entering said store through said entranceway or doorway in the exercise of ordinary care for their own safety were likely to be deceived and to stumble or trip over said board across the lower part of said entranceway and fall and be injured; that by reason of said conditions said doorway or entranceway was dangerous and not reasonably safe for persons entering the same; * * * that plaintiff had never used said entrance or doorway before and did not have any knowledge of the aforesaid conditions; that because of the appearance of said door and the board below it, plaintiff believed that the door extended to the floor of said entrance; that plaintiff, in the exercise of ordinary care for her own safety, opened said door and stepped forward," etc.

Defendants argue that plaintiff had the burden of proving "that the sill was not obvious to one using ordinary care"; that "a plaintiff's verdict-directing instruction must include all of the essential elements of plaintiff's case"; that plaintiff's main instruc-tion directed a verdict for plaintiff without requiring a finding "that the sill was not obvious to plaintiff in the exercise of ordinary care"; hence the instruction was prejudicially erroneous. Defendants also contend that the error was not cured by their instruction 7 which told the jury "that there was no duty on defendants to post a warning sign or warn the plaintiff of the construction, location or condition of the door and door sill, if, in the exercise of ordinary care, the same were in plain sight and the danger thereof, if any, obvious to her". It is implied, in defendants' argument, that the two instructions are inconsistent. In support of their argument defendants cite two business-invitee cases, Schwartz v. S. S. Kresge Co., 238 Mo.App. 1165, 185 S.W. 2d 37, and Daggs v. Patsos, Mo.App., 260 S.W.2d 794, with the comment that both cases "had to do with the somewhat different, but related, element of plaintiff's 'ignorance of the danger.'" Both cases held that absence of knowledge of the dangerous condition on the plaintiffs' part was an essential element of their cases; hence their main instructions were prejudicially erroneous in failing to require a finding that plaintiffs had no knowledge of the dangerous conditions in time to have avoided them. It was also held that the error was not cured by four instructions on behalf of the defendant which told the jury that if the plaintiff in the exercise of ordinary care saw or should have seen the ramp in time to avoid stepping on it the verdict should be for defendant, and that it was not cured by the plaintiff's instruction which required a finding that she was in the exercise of ordinary care for her own safety at the time.

The Schwartz and Daggs cases do not support defendants' contention that the plaintiff's principal instruction in a case of this character is prejudicially erroneous if it does not require a finding that the alleged dangerous condition was not obvious to a person in the exercise of ordinary care. The question of whether plaintiff's verdict-directing instruction must include this hypothesis, as an essential element of her case, is one involving the substantive rights of the parties. We have found no Kansas case

in point. It is not necessary, however, to decide the question, for we think that part of plaintiff's instruction quoted above required the jury to find, in effect, that "the sill was not obvious to one using ordinary care". Since the jury was required to find that the pass door and the so-called sill "were so constructed and maintained as to appear to be all in one piece and all part of said door extending all the way down to the exterior paved surface," and that "by reason of the aforesaid condition" business visitors "in the exercise of ordinary care for their own safety were likely to be deceived and to stumble or trip over said board across the lower part of said entranceway * * *," it would appear unreasonable to say that the instruction was prejudicially erroneous in failing to require a finding that "the sill was not obvious to one in the exercise of ordinary care". As stated in plaintiff's brief, even if her instruction was ambiguous or indefinite in this respect, it was cured by defendants' instruction 7, which is set forth above.

 Plaintiff's instruction is not one to be recommended as a model of clarity. An instruction purporting to cover the whole case and authorize a verdict for the plaintiff is erroneous if it omits any fact essential to a recovery. The error is not cured by the defendants' instruction requiring such fact to be found, for the two instructions are conflicting. Raymond, Missouri Instructions, Vol. 1, sec. 93, p. 76, and cases cited. However, if the plaintiff's principal instruction does require the jury to find all of the essential elements of the plaintiff's case, but states some of them indefinitely or ambiguously or in language which might be misleading, then an instruction for the defendant which "specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite. When all of the instructions thus harmonize and when read together correctly state the law, any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instructions." McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, 40. See also Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487, 491. The case of Daggs v. Patsos, supra, cited by defendants, is in harmony with these cases.

 Plaintiff's instruction 1 and defendants' instruction 7 are not inconsistent. When read together they do not authorize a verdict for plaintiff without a finding that the condition complained of was not obvious to a person exercising ordinary care for his own safety. The giving of plaintiff's instruction 1 was not reversible error.

The judgment should be sustained.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.